FOURTH DIVISION
Filed: June 22, 2006

NO.   1-04-0630

| | | |
|---|---|---|
| THE CITY OF CHICAGO, a Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 02 M1 402569 |
| JULIO RAMIREZ, | ) ) | Honorable Sebastain P. Patti, |
| Defendant-Appellant. | ) ) | Judge Presiding |

JUSTICE MURPHY delivered the opinion of the court:

Defendant Julio Ramirez appeals from orders of the circuit court denying his motions to (1) vacate a judgment in favor of plaintiff City of Chicago (City) ordering the demolition of a building (building) on the premises at 2851 West 25th Street in Chicago (premises); and (2) enforce a settlement agreement between Ramirez and the City.  Ramirez contends that the trial court erred in denying his motions.

FACTS

In June 2002, the City filed a complaint for equitable relief seeking injunctive relief -- an order that the building be either repaired or demolished -- and civil penalties on the grounds that the building was dangerous and unsafe and that it constituted a nuisance.  The defendants in the complaint were Luis Carrillo as owner of the premises, Countrywide Home Loans, Inc. (Countrywide), as mortgagee, Jorge Vega as the last-known taxpayer of record, any unknown owners of the premises, and any nonrecorded claimants.

Defendants Carrillo and Countrywide were duly served with summonses, and Countrywide appeared.  The United States Department of Housing and Urban Development (HUD) petitioned for leave to intervene as the new owners of the premises.  On September 6, 2002, the trial court issued an order finding Carrillo in default and dismissing Vega from the case without costs.  Publication notice was ordered for the unknown owners and claimants.

On November 15, 2002, the trial court granted HUD leave to intervene, and HUD entered its appearance that same day.  The court also entered a "protective order" providing in relevant part that Countrywide was a mere mortgagee of the premises, that Countrywide had no objection to demolition of the building, and that "affirmative relief" would not be sought against Countrywide without prior written notice to its attorneys.  The court ordered Countrywide to pay the City $309 in litigation costs.  The unknown owners and claimants, having received publication notice, were found to be in default.

On November 26, 2002, the City issued a release of judgment against Countrywide upon its payment of the $309 in costs.

On January 10, 2003, the court ordered that the City could conduct an interior inspection of the building and that HUD must permit and attend the inspection.  On March 21, 2003, the court ordered HUD to "secure and keep secure the entire subject property."

On April 15, 2003, the trial court issued an "order of demolition by consent."  The order recited that all defendants except for HUD and Countrywide had default orders entered against them "which ha[ve] not been challenged."  The court found that the building was "dangerous,

unsafe, and beyond reasonable repair" due to an enumerated list of problems including damaged plumbing and electrical systems, loose exterior masonry, broken windows and doors, broken interior walls, and damaged floors.  The court recited that HUD, as owner of the premises, agreed that the City was authorized to demolish the building after June 20, 2003, without further notice unless the parties reached a consent decree before that date.  HUD agreed to monitor the premises daily and "to secure and keep secure the building," until further order of court.  The City's claims for civil penalties were voluntarily dismissed without prejudice, but the order recited that the City was "entitled to a lien for the costs of demolition [and] court costs" if the City demolished the building.  The order also provided that, "[p]ursuant to Illinois Supreme Court Rule 304(a), this is a final and appealable order.  The Court finds no just reason for delay in enforcement or appeal of this judgment."  The court expressly retained jurisdiction to enforce the order and "for the purpose of ascertaining the demolition and litigation costs *** if the City demolishes the building."

In late July 2003, Ramirez filed a motion to stay the demolition, stating that he was the new owner of the premises, claiming that HUD had not informed him of the instant civil action before it sold him the premises, and seeking a stay of the demolition order until he "is able to obtain permits and bring [the] property to Code."  The court denied the motion without prejudice on August 8, 2003.

In mid-August 2003, Ramirez filed an appearance and motion to intervene, stating that he was the new owner of the premises and arguing that no party presently in the case could

represent his interest in barring the demolition of the building.  Ramirez also filed an emergency

motion to stay the demolition order pending a hearing on his substantive motion to reconsider.

Lastly, Ramirez filed a motion to reconsider "the judgment of April 15, 2003," in which he

recited that the court denied his earlier motion to stay demolition on the grounds that it was filed

more than 30 days after the final judgment of April 15, 2003.  Ramirez argued that the April 15

order was not final and appealable because the City's claim for money judgment was not

resolved in that order.  Ramirez also argued that the court would be denying Ramirez substantive

justice, and thus abusing its discretion, if it did not vacate or stay the demolition order.

On August 18, 2003, the trial court issued orders (1) granting Ramirez leave to intervene,

(2)  staying the demolition order, and (3) giving the City seven days to respond to Ramirez's

motion to reconsider.  On August 26, 2003, the stay order was continued to October 17, 2003.

In September 2003, the City filed a motion to reconsider the order granting Ramirez

leave to intervene, arguing that Ramirez had provided no evidence that he was the new owner of

the premises and that his motion for intervention was untimely filed.  On the latter point, the City

argued that Ramirez filed his first motion to stay the demolition on July 28, 2003, only one day

after he purchased the premises from HUD, and that Ramirez as the owner of the premises had

constructive notice since the City filed *lis pendens* on June 13, 2002.

Ramirez responded to the City's motion, arguing that the demolition order was an

interlocutory order because it did not resolve the issue of how much compensation the City was

due for demolition and court costs.  He also argued that the order was not a final judgment

because the trial court had entered only orders of default, rather than default judgments, against the other defendants.  Ramirez also argued that he was the owner of the premises, stating in his response that he was attaching a copy of the deed.  However, the copy of Ramirez's response in the record on appeal does not include such an attachment.  Lastly, he argued that the filing of a *lis pendens* does not bar intervention by subsequent purchasers of the land in question.

In October 2003, Ramirez filed a "motion to enforce settlement."  The motion did not specify under what section of the Code of Civil Procedure it was filed.  In sum, Ramirez alleged that he complied with the City's routine requirements for a consent decree in building code violation cases.  He admitted that he and the City had not executed a written settlement agreement but argued that a contract or agreement can be reached by a "meeting of the minds" supported by consideration.  Specifically, Ramirez alleged that, on August 20, 2003, he filed with the City an application for a consent decree.  The City sent him a letter the next day setting forth "the requirements for Mr. Ramirez to complete the documentation for a consent decree satisfactory to the City."  Ramirez sent this documentation to the City on September 11 and sent additional documentation on September 18.  Ramirez also obtained a check for $309 payable to the City for court costs and another check for $450 as premium for a required bond.  Attached to the motion were copies of the aforementioned documents.

Later in October 2003, the City filed a motion seeking sanctions against Ramirez and requesting that various motion pleadings by Ramirez be stricken.  In one portion of the motion, the City moved to strike Ramirez's "motion to enforce settlement" and requested sanctions for its

filing.   The City did not cite to any section of the Code of Civil Procedure as authority to strike

the motion, although the City did cite to Supreme Court Rule 137 (155 Ill. 2d R. 137) as the

basis for sanctions.  The City argued that there was an ambiguous counteroffer by Ramirez,

rather than a clear offer and unambiguous acceptance of that offer, and thus there was no

meeting of the minds and no agreement.  The City further argued that, because it was obvious

that there was no meeting of the minds between the City and Ramirez, Ramirez's claim of a

settlement agreement was frivolous and deserving of sanctions.

Ramirez replied in support of his motion to enforce settlement agreement, arguing that

the City had expressed to him a willingness to negotiate a consent decree if certain materials and

information were provided.  When Ramirez provided the specified information and documents,

he argued, he complied with the City's requirements for a consent decree.  Ramirez argued that

any ambiguities between his position and the City's did not mean *ipso facto* that there was no

agreement, but instead that the court had to conduct an evidentiary hearing to determine whether

an agreement was reached.

At a hearing on October 17, 2003, otherwise concerned with routine scheduling matters,

City building inspector David Marutzsky testified that he inspected the premises on October 15,

2003, and found the building had been "wrecked and leveled."  While Marutzsky knew which

contractor had performed the demolition, he was unsure whether the City had hired that firm to

perform the demolition.

NO.   1-04-0630

On November 14, 2003, the trial court held a hearing on the pending motions by Ramirez and the City.  The City argued that Ramirez should be dismissed as an intervenor because the law requires an intervenor to have an interest at the time final judgment was issued.  While the statute authorizing intervention allows postjudgment intervention, the City argued, that intervention "is conditioned upon [the intervenor] having an interest at the time final judgment is rendered."  Since Ramirez bought the premises after the final judgment of the demolition order, he could not later intervene.  Ramirez responded that the statute (735 ILCS 5/2-408 (West 2002)) also provides that postjudgment intervention will be allowed where it is the only way to protect the intervenor's rights.  Ramirez also argued that he had, in his petition to intervene, cited the very case now cited by the City and thus there was no new law, or change in law, requiring reconsideration.  The court then stated that it had reviewed the legal basis for its earlier decision to allow intervention and found that the decision was correct.

The court noted that Ramirez's motion to reconsider vacatur of the demolition order was grounded in the nature of the demolition order as final or nonfinal.  Ramirez argued that the demolition order was not final because it did not dispose of claims against all defendants.  In other words, the consent decree was between the City and HUD alone, not the other defendants.  The court then pointed out that the nature of the demolition order – granting the City the right to demolish the building on (then) HUD's premises – was inherently final.  Ramirez further argued that the demolition order was not final because, while it resolved that the City would be due demolition and court costs, it did not resolve the amount of those costs.  The City responded that,

because the demolition order clearly recited the names of all defendants and that defaults had

been entered against the defendants other than HUD, the demolition order was indeed final. As

to the open issue of costs, the City argued that an order is final if it resolves all issues except

enforcement of the order and the amount of costs. The court stated that it had reviewed the

applicable law and concluded that its earlier decision -- that Ramirez untimely sought vacatur of

a final judgment more than 30 days after the judgment -- was correct.

Turning to Ramirez's motion to enforce a settlement agreement, the court asked

Ramirez's counsel why it should "in effect, order the City *** to consent to some sort of

agreement that your client may or may not have had with the City?" Ramirez argued that the

court must either determine that an express agreement exists or hold an evidentiary hearing on

whether an agreement was reached. The City responded that it had told Ramirez in a letter that

if he sent the City certain documentation, the City would be "willing to negotiate" a consent

decree, not that an agreement would *ipso facto* exist if those documents were tendered. The

court then stated that it would not strike Ramirez's motion to enforce, or impose the sanctions

sought by the City, but it also would not grant the motion. The court stated:

> "I am simply not convinced that there was an agreement, much less
>
> an agreement in principle. The language crafted, used in the
>
> transmittal letter is subjunctive, I believe, in form. The use of the
>
> word 'if' reflects, in my estimation, an agreement by the City to
>
> simply continue settlement negotiations; and that falls, I believe,

significantly short of not only an agreement in principle but an

agreement in fact."

The court noted that, in light of the evidence that the building had been demolished, there was no reason not to take the case off-call. When the City asked the court to lift the stay of demolition, Ramirez objected that such a motion should be in writing and explain why the stay should be lifted. The court agreed.

The court issued a written order the same day, November 14, 2003, upholding its earlier decisions (1) allowing Ramirez to intervene and (2) denying Ramirez vacatur of the demolition order on the basis of lack of jurisdiction. The court also denied Ramirez's motion to enforce settlement, but refused to strike the motion or to impose sanctions for its filing as the City requested. The court granted the City 28 days to file a written motion to vacate the stay of demolition.

In December 2003, the City moved to vacate the stay of demolition, on the grounds that the stay order of August 18, 2003, was improper because it was issued well after 30 days from the demolition order of April 15, 2003, a final and appealable order. Ramirez responded to this motion in January 2004, arguing that the stay was proper and should continue during his appeal.

On January 23, 2004, the court held a hearing on the City's motion to vacate the stay. The City argued that the stay order was void because Ramirez had sought the stay more than 30 days after the demolition order, which the City argued was a final order. Ramirez argued that the relevant statute (735 ILCS 5/2-1305 (West 2002)) authorizes stays for the purpose of

maintaining the status quo until a motion could be heard, regardless of the jurisdictional circumstances.  The City responded that neither the motion for the stay nor the stay order referred to the statute cited by Ramirez, so the relief was not sought or granted under that statute.  In reply, Ramirez noted at least one express reference to the statute in his motion seeking a stay.  The court announced its decision: "the stay was a prior lawful order of court."

The same day, January 23, 2004, the court issued a written order denying the City's motion to vacate the stay.  The order also took the case off-call and found "no just reason to delay enforcement or appeal of this order."

Ramirez filed a notice of appeal on February 19, 2004.

## MOOTNESS

Upon reviewing the record in this appeal, we have come to the conclusion that this appeal is moot.  An issue is moot if no actual controversy exists or if events have occurred that make it impossible for the court to grant the complaining party effectual relief.  In re Marriage of Peters-Farrell, 216 Ill. 2d 287, 291 (2005).  Here, the relief Ramirez was seeking from the circuit court was modification or revocation of the demolition order.  When the building in question was destroyed before the court could rule upon Ramirez's requests for relief, the trial court could no longer grant Ramirez a modification or revocation of the demolition order.  Though this case is moot, we will address Ramirez's contentions on appeal because they raise issues of importance that this court has seen recur with disturbing frequency and regarding which we desire to provide guidance to the circuit court.  See Brown v. Duncan, 361 Ill. App. 3d 125, 134-35 (2005).

ISSUES PRESENTED

Ramirez contends on appeal that the trial court erred in denying his (1) motion to reconsider vacatur of the demolition order and (2) motion to enforce a settlement agreement.

The City contends in turn that this court lacks jurisdiction over this cause, that the trial court lacked jurisdiction to grant Ramirez a stay of the demolition order, and that the trial court did not err in denying Ramirez's motions described above.

JURISDICTION

Before considering the merits of this appeal, we must first determine whether we have jurisdiction over this cause.  That is particularly true here, where the issue of whether the trial court had jurisdiction to conduct the proceedings after the demolition order goes both to whether the trial court had the jurisdictional "baton" to pass on to us and to the merits of Ramirez's claim.

Final and Appealable Order

Supreme Court Rule 304(a) provides:

> "If multiple parties or multiple claims for relief are
> involved in an action, an appeal may be taken from a final
> judgment as to one or more but fewer than all of the parties or
> claims only if the trial court has made an express written finding
> that there is no just reason for delaying either enforcement or
> appeal or both.  ***  In the absence of such a finding, any
> judgment that adjudicates fewer than all the claims or the rights

and liabilities of fewer than all the parties is not enforceable or
appealable and is subject to revision at any time before the entry of
a judgment adjudicating all the claims, rights, and liabilities of all
the parties." 155 Ill. 2d R. 304(a).

An order is final if it "disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy." Brentine v. DaimlerChrysler Corp., 356 Ill. App. 3d 760, 765 (2005), citing Dubina v. Mesirow Realty Development, Inc., 178 Ill. 2d 496, 502 (1997).

Here, it is apparent from the demolition order that the trial court considered the claims against all defendants other than HUD to be disposed of at that point. The demolition order repeatedly and consistently referred to HUD as "Defendant" or "the defendant," rather than as one of many defendants. The order expressly named the other defendants and recited that the defendants other than HUD and Countrywide had been found in default "which has not been challenged." The court had previously (on November 15, 2002) entered an order finding that Countrywide was a mere mortgagee of the premises and that Countrywide had no objection to demolition of the building, ordering that "affirmative relief" would not be sought against Countrywide without prior written notice to its attorneys, and ordering Countrywide to pay the City $309 for court costs. Moreover, the City filed a release of judgment against Countrywide, for the order "entered November 15, 2002," when Countrywide paid the court costs. The clear import of the order of November 15, 2002, was to resolve all claims against Countrywide.

NO.   1-04-0630

As to whether all of the City's substantive claims were disposed of in the demolition order, that is essentially an irrelevant question.  The demolition order clearly made a final disposition of the City's equitable claims: the City could demolish the building after a specified date without further court order or notice.  The order also included a finding of immediate appealability as provided in Rule 304(a).  The City's right to demolish the premises was therefore fully and finally disposed of in the demolition order.

Finality Exception for Injunctive Orders

However, the circuit court has jurisdiction to modify or dissolve its injunctions outside the 30-day limit for filing posttrial motions and notices of appeal.  American Institute of Real Estate Appraisers of the National Ass'n of Realtors v. National Real Estate Ass'n, Inc., 191 Ill. App. 3d 867, 869 (1989).  That ongoing jurisdiction is limited to determining whether changes in applicable law or facts since the rendition of the judgment warrant modification of the terms of the injunction, but does not include the power to inquire into the propriety of the judgment as to conditions existing when judgment was entered.  American Institute of Real Estate Appraisers of the National Ass'n of Realtors, 191 Ill. App. 3d at 870.

Here, the City's complaint sought equitable relief and the demolition order recited that fact.  Though judgment was entered in favor of the City in the demolition order, the City was prohibited from carrying out demolition of the building until June 20, 2003.  Defendant (at the time, HUD) was expressly enjoined to remove all persons and personal property from the building so as to keep it vacant.  Lastly, the demolition order implicitly but clearly barred HUD

or a subsequent owner (in this case, Ramirez) from physically or legally resisting demolition by the City or its agent.  From these facts, we conclude that the demolition order was injunctive. The trial court therefore had jurisdiction to consider a challenge to the City's injunctive relief based on a change of circumstances.  In arguing that he was a subsequent owner of the premises and that HUD had not informed him of the demolition order before he became the owner, Ramirez was certainly claiming that there was a change in circumstances from when the demolition order was issued.  Once Ramirez was allowed to intervene,[1] he duly invoked the court's ongoing power to reconsider the demolition order.

---

[1]Whether that intervention was proper will be addressed below.  Suffice it to say at this point that intervention after judgment, though unusual, is permissible.  In re Marriage of Kueteman, 273 Ill. App. 3d 77, 79 (1995).

The City further argues that, even if Ramirez's motion to reconsider was deemed timely, the jurisdiction of this court was still not properly invoked.  Ramirez should have appealed within 30 days of the order of November 14, 2003, denying his motions to reconsider and to enforce an agreement.  The City argues that, by not filing his notice of appeal until after the order of January 23, 2004, denying the City's motion to vacate the stay, Ramirez acted untimely and this court lacks jurisdiction.  However, the November 14 order expressly granted the City time to file a written motion to vacate the stay and did not include a Rule 304(a) appealability finding.  It was only when that motion was disposed of in the January 23 order -- an order that also took the case off-call and included an appealability finding -- that the court made a final disposition of this case.  We conclude that Ramirez timely appealed from the January 23 order, duly vesting this court with jurisdiction.

## LIS PENDENS AND INTERVENTION

The City points to Ramirez's constructive notice of this civil action, through the *lis pendens* filed by the City, and argues that Ramirez is bound by HUD's agreement with the City memorialized in the demolition order.  This court has addressed similar issues in RTS Plumbing Co. v. DeFazio, 180 Ill. App. 3d 1037 (1989), where subsequent purchasers of land sought to intervene in a foreclosure action following a judgment of foreclosure against the previous landowners.  On the threshold issue of intervention, this court found that the filing of a *lis pendens* does not inherently bar a subsequent purchaser from intervening.  RTS Plumbing Co.,

180 Ill. App. 3d at 1041.  Allowing intervention by a subsequent purchaser was compatible with the *lis pendens*:

>"The purpose of the doctrine of *lis pendens* is the avoidance of endless litigation of property rights precipitated by the transfer of interests in the property after litigation has begun.  [Citation.] This purpose is achieved by conclusively binding the party receiving the interest to the result of the litigation as though he or she had been a party from the outset."  RTS Plumbing Co., 180 Ill. App. 3d at 1041.

A petition to intervene must be timely, with the relevant considerations including when the intervenor became aware of the litigation, the amount of time that elapsed between the initiation of the action and the filing of the petition to intervene, and the reason for the intervenor's failure to seek intervention earlier in the proceedings.  RTS Plumbing Co., 180 Ill. App. 3d at 1042.  Whether a petition to intervene was timely is an issue left to the discretion of the trial court.  RTS Plumbing Co., 180 Ill. App. 3d at 1042.

Here, Ramirez was acting *pro se* when he filed his initial motion to stay the demolition, without duly intervening, on July 28, 2003.  In the motion, Ramirez alleged that he had purchased the premises the preceding day.  When the court denied this initial motion on August 8, 2003, Ramirez petitioned (through counsel) to intervene on August 15.  Under such

circumstances, it is reasonable to conclude that Ramirez timely sought intervention, and we therefore find that the court did not abuse its discretion in allowing Ramirez to intervene.

Turning to the merits of Ramirez's petition to reconsider, the existence of the *lis pendens* in this case is not the key the City contends it to be.  The *lis pendens* statute, section 2-1901 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-1901 (West 2002)), provides that, in a civil action seeking equitable relief involving real property, the filing of a specified notice of that action with the relevant recorder of deeds constitutes constructive notice to any person subsequently acquiring an interest in the property.  Every person "whose interest or lien is not shown of record at the time of filing such notice" is "deemed a subsequent purchaser and shall be bound by the proceedings to the same extent and in the same manner as if he or she were a party thereto."  735 ILCS 5/2-1901 (West 2002).  Here, the City filed a *lis pendens* at a time that Ramirez's interest in the premises was clearly not of record (because he had not obtained it yet).  Ramirez thereby stands in the same position with regard to the demolition order as HUD, its predecessor in interest as owner of the premises at the time the demolition order was entered.

However, HUD or any subsequent owner could still petition the court to modify or dissolve the stay order due to a change in circumstances.  In particular, Ramirez could argue that he should have the opportunity to repair the building to bring it up to code, a proposition that the court had ample discretion to accept or reject.  See American Institute of Real Estate Appraisers of the National Ass'n of Realtors, 191 Ill. App. 3d at 870.  The trial court refused to exercise its discretion when it found erroneously that it had no jurisdiction to consider Ramirez's motion to

reconsider.  Therefore, if this case were not moot due to the prehearing demolition of the building, this court would remand for the trial court to consider the merits of Ramirez's motion.

### MOTION TO ENFORCE SETTLEMENT

Ramirez contends that the trial court erred in denying his motion to enforce a settlement agreement with the City.  He argues that such an agreement resulted through an exchange of letters and documents that evinced a meeting of the minds to lift or further stay enforcement of the demolition order.  Particularly, the City requested that Ramirez provide certain specified documents if a settlement agreement was to be reached, and when Ramirez provided the requested information, he in essence accepted the City's settlement offer.

Before we can determine whether the trial court erred in denying Ramirez's motion, we must first determine what sort of motion it was.  As noted above, the motion itself does not cite to any section of the Code of Civil Procedure or the supreme court rules as authority.  On first appearance, this prehearing motion is best classified as a motion for summary judgment concerning the issue of settlement.  In the motion, Ramirez was requesting that the trial court enter a new judgment more favorable to Ramirez (based on the alleged settlement agreement) prior to an evidentiary hearing or trial.  An examination of the case law reveals that a motion to enforce a settlement agreement can be a motion unto itself, albeit one not expressly authorized by the Code of Civil Procedure or supreme court rules.  See Pritchett v. Asbestos Claims Management Corp., 332 Ill. App. 3d 890, 899 (2002); Janssen Brothers, Inc. v. Northbrook Trust

& Savings Bank, 12 Ill. App. 3d 840, 843 (1973).  Like a summary judgment motion, the trial court's decision to grant or deny enforcement of a settlement agreement made on the motion pleadings and attachments, without holding an evidentiary hearing, is reviewable *de novo*.  See Founders Insurance Co. v. Contreras, 362 Ill. App. 3d 1052, 1055 (2005) (summary judgment, reviewed *de novo*, is proper where the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law).  Also like a summary judgment motion, if the court determines that there is insufficient evidence to decide summarily whether a settlement agreement exists or what its terms are, the factual dispute regarding the settlement agreement may be resolved in a later evidentiary hearing or trial.  Pritchett, 332 Ill. App. 3d at 899; Janssen Brothers, Inc., 12 Ill. App. 3d at 843.

A settlement agreement need not be in writing, so long as there was an offer and acceptance and there is a meeting of the minds as to the terms of the agreement.  Quinlan v. Stouffe, 355 Ill. App. 3d 830, 837 (2005).  Like any other contract, the essential terms of the settlement agreement must be definite and certain for it to be enforceable.  Quinlan, 355 Ill. App. 3d at 837-38.  An evidentiary hearing regarding the formation and terms of a settlement agreement may be appropriate when there is a disputed  issue on that point and additional evidence or testimony is required to satisfactorily resolve the issue.  Pritchett, 332 Ill. App. 3d at 899; Janssen Brothers, Inc., 12 Ill. App. 3d at 843.

Here, the relevant letter from the City to Ramirez's attorney states that "the City is still willing to negotiate a consent decree with Mr. Ramirez if he can provide the City the missing materials and information" specified elsewhere in the letter. The City did not state that an agreement would exist or arise if the materials were provided, only that the City would continue negotiating an agreement. The trial court could not find a firm offer in such nonbinding language as "willing to negotiate." We concur. In his briefs to this court, Ramirez is citing to the same correspondence between his counsel and the City that he presented to the trial court, and he does not allege the existence of any further information or potential testimony in support of his claim. In short, Ramirez did not demonstrate the need for a hearing to present additional evidence. Additionally, the implied agreement alleged by Ramirez does not address the essential question of whether the City was giving up its right to demolish the building or only postponing exercise of that right until a specified date to allow Ramirez to repair the building. The absence of such a key provision renders any agreement in principle (assuming *arguendo* that one was reached) unenforceable. We conclude that the trial court did not err in denying Ramirez's motion to enforce a purported settlement agreement with the City.

## CONCLUSION

For the aforementioned reasons, this court would affirm the trial court's decision to deny Ramirez's motion to enforce settlement but would vacate the trial court's denial of Ramirez's motion to reconsider and remand for the court to consider the latter motion on its merits. However, as explained above, this case is moot.

NO.    1-04-0630

Accordingly, this appeal is dismissed as moot.

Dismissed.

QUINN, P.J., and GREIMAN, J., concur.