2020 IL App (1st) 191210-U

SIXTH DIVISION
December 11, 2020

No. 1-19-1210

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DEVON BANK, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 14 CH 07546 |
| | ) | |
| PANDORA S. SPIRRISON, | ) | Honorable Gerald Cleary, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The settlement terms are ambiguous and therefore an evidentiary hearing must be held to determine the intent of the parties; reversed and remanded for an evidentiary hearing.

¶ 2    This is an interlocutory appeal from an order holding defendant, Pandora Spirrison, in indirect civil contempt of court for her failure to comply with an order directing her to perform the terms of a settlement she had allegedly reached with Devon Bank (Devon). For the following reasons, we reverse the trial court's order finding Pandora in indirect civil contempt of court, and

we reverse the underlying order by the trial court granting Devon's motion to enforce the settlement agreement.

¶ 3                                 I. BACKGROUND

¶ 4       Devon filed a lawsuit against Pandora and her then-husband James Spirrison to foreclose mortgages dated September 8, 2008, and June 4, 2009. Each mortgage granted Devon a security interest in the real property at 204 Sheridan Road in Glencoe. The 2008 mortgage was given to secure payment of a $550,000 credit agreement that bears the signatures of James and Pandora. The 2009 mortgage was given to secure a second credit agreement for $750,000. Devon claimed that Pandora and James failed to make payments due on the 2008 and 2009 agreements, and that both loans had matured by their terms and remained unpaid.

¶ 5       In response to the suit, Pandora claimed James had not disclosed those loans to her and had forged her signature on the loan documents. Pandora claimed that, unbeknownst to her, James suffered serious financial hardships in his employment in 2007 and began to borrow heavily from Devon. Pandora stated that when she and James purchased the property in question, she understood it be free of debt and in her name only. Pandora alleged unclean hands and forgery as affirmative defenses to Devon's foreclosure complaint.

¶ 6       Pandora also filed a counterclaim against Devon for a declaratory judgement and an injunction, and asserted violations of the Illinois Notary Public Act, and Violation of the Truth in Lending Act. Pleadings for both parties were amended several times.

¶ 7       Subsequently, Devon filed a second amended complaint of foreclosure. On January 3, 2017, Pandora filed a motion to dismiss Devon's second amended complaint of foreclosure in its entirety. Attached to the motion was an affidavit from James stating that he signed Pandora's name to each of the mortgage and loan documents in question and "did so without her

knowledge or consent." He stated that Pandora had no knowledge that he had obtained either the 2008 loan or the 2009 loan from Devon and she was not aware that he was in possession of the loan proceeds. He stated that there was no notary public present when he signed the mortgages and credit agreements and there was no notary jurat on the documents when he returned them to Devon.

¶ 8 On August 7, 2017, both parties appeared before the trial court and informed the court that they had agreed to mediate the dispute. The order stated that Devon shall answer Count I of Pandora's second amended counterclaim within 14 days after the mediation, and that Pandora shall answer Devon's second amended complaint within 14 days after the mediation. The case was set for status on October 25, 2017.

¶ 9 A mediation was held on October 3, 2017. James was not at the mediation. At the conclusion of the mediation, a document entitled "Settlement Terms" was signed by Pandora, her attorney, the chairman and CEO of Devon, and counsel for Devon. The Settlement Terms, in their entirety, stated:

"1. Devon Bank will pay the sum of five hundred thousand and 00/100 dollars ($500,000.00) to Pandora S. Spirrison ("Pandora") as follows:

a. One half upon Pandora's and James C. Spirrison's ("James") execution of a fully drafted and negotiated settlement agreement, which will incorporate the terms of this term sheet and evidence that the Attorney Lien of Robert C. Samko, Esq. has been released but if it has not then his first payment will be reduced by the amount of said Attorney Lien; and then

    b.  The second one-half to Pandora when she and James vacate the Property, which shall not be later than 15 January 2019.

  2.  Devon Bank agrees to pay to the law firm of Valentine Austriaco Bueschel PC three thousand five hundred and 00/100 ($3500.00).

  3.  Pandora and James will provide their full cooperation with respect to giving written consent to an Unopposed Judgment Of Foreclosure And Sale of both mortgages and against both Pandora and James, and for the full amounts loaned and advanced by Devon Bank, and an Unopposed Order Approving Sale, to be signed by Pandora and James, and their respective counsel.

  4.  Judgments will be *in rem* only. Devon Bank agrees not to seek any personal-deficiency judgments against Pandora and James.

  5.  Pandora and James will agree to an Order of Possession as of 15 January 2018.

  6.  Pandora and James will agree to cooperate with Devon Bank prior to 15 January 2018, including but not limited to allowing entry to the premises for purposes of appraisal and inspection.

  7.  With the exception of the completion of the foreclosure, the Parties will execute mutual releases."

¶ 10 On March 21, 2018, Devon filed a "Motion to Enforce Settlement," asking the court to 1) enforce "the settlement" entered into between Devon, Pandora, and James, 2) enter orders of judgment of foreclosure and sale on the mortgages being foreclosed in Devon's complaint, and 3) "dismiss with prejudice Pandora's pending counterclaim." In support of its motion, Devon

noted that its second amended complaint to foreclosure two mortgages was still pending before the court, as was Pandora's second amended counterclaim for notary misconduct. Answers to the complaint and counterclaim had been deferred by agreement pending the completion of mediation.

¶ 11    Devon claimed that "a settlement" was reached during mediation "resolving all pending claims in exchange for, amongst other considerations, the Bank's payment of the sum of $500,000 to Pandora." Devon stated that after the conclusion of the mediation, the parties and their counsel executed a document entitled "Settlement Terms," and that Pandora and her counsel indicated that James would be part of the settlement. Devon stated that counsel for both parties prepared a written "Settlement Agreement" incorporating the terms agreed to, as well as stipulations regarding the pending foreclosure, which had been submitted to the parties for execution. Pandora and James, however, refused to sign the Settlement Agreement.

¶ 12    Devon claimed that the parties' settlement that they reached during mediation "did not contemplate that the signing of another written document would be a condition precedent to the settlement between them, and therefore the failure of defendants to execute same is not an impediment to enforcement of the settlement by this Court."

¶ 13    The unsigned Settlement Agreement was attached to the motion and was 8 pages long and contained 21 paragraphs. Of particular importance, paragraph 6, subsection (iii) stated:

>     "(iii) Pandora agrees that upon execution of this Agreement, she shall cause her Counter-complaint, including all previously dismissed Counterclaims and her pending Count I for notary misconduct, to be dismissed with prejudice and without costs."

¶ 14    One of the attached stipulations was entitled "Stipulation to Enter Orders of Judgment and Dismissal of Certain Counts." It stated that James and Pandora each consented and agreed to an order of judgment of foreclosure and sale in favor of Devon on Counts I and II of Devon's complaint to foreclose the two mortgages in question. It also stated that James and Pandora each respectively waived, released, and withdrew any and all affirmative defense or other defenses to the enforcement of the 2008 mortgage, the 2008 note, the 2009 mortgage, and the 2009 note. It further stated that Pandora agreed to dismiss with prejudice, and without costs, her Second Amended Counterclaim, "including all previously dismissed claims and her pending Count I for Notary Misconduct."

¶ 15    Devon requested the court to "enter an order enforcing the settlement agreement, and on that basis (i) enter judgment of foreclosure and sale on [Devon's] mortgages against each of the Spirrison's; (ii) enter an order dismissing Pandora Spirrison's counterclaims with prejudice, and (iii) grant Devon such further relief as this Court deems just and equitable."

¶ 16    On April 27, 2018, Pandora's counsel filed a motion to withdraw as counsel due to "irreconcilable differences." On May 14, 2018, the trial court granted counsel leave to withdraw and granted new counsel leave to substitute as counsel for Pandora.

¶ 17    On June 1, 2018, counsel for James informed the court that James had passed away on April 24, 2018, and withdrew from the case. On June 20, 2018, a special representative was appointed to stand in place of the deceased mortgagor.

¶ 18    On June 14, 2018, Pandora filed a response to Devon's motion to enforce settlement. She argued that "Devon had no obligation under the term sheet unless and until Pandora and James negotiated and signed a Settlement Agreement," and since those conditions had not been met, there was no enforceable Settlement Agreement. Pandora stated that the parties intended there to

be continued negotiations culminating in a written and executed settlement agreement. She also stated that the proposed Settlement Agreement contained many more obligations than had been contemplated by the term sheet.

¶ 19   On June 21, 2018, Devon filed a reply brief in support of its motion to enforce settlement. It stated that as part of the Settlement Terms, the parties agreed that the payment by Devon would be split in two, with the first payment made upon "execution of a fully drafted and negotiated settlement agreement which will incorporate the terms of this term sheet." Devon argued that this language did not make the settlement itself conditional, but instead spoke to the timing of the first payment and reflected the fact that the parties would jointly prepare a written document incorporating the terms of their agreement.

¶ 20   On July 11, 2018, a hearing was held on Devon Bank's motion to enforce. The transcript of that hearing does not appear in the record on appeal. The court's order states that Devon's "motion to enforce settlement is denied for the reasons stated in open court, but without prejudice."

¶ 21   On August 6, 2018, Devon filed a second motion to enforce the settlement agreement. The motion was substantially the same as the first motion to enforce the settlement agreement. The motion was supported by the affidavit of Devon's counsel, who was present at the mediation. In his affidavit, Devon's counsel stated that after the conclusion of a full day of mediation, the parties agreed to settle their pending disputes and executed the "Settlement Terms," reflecting their agreement. He stated that prior to preparing those terms, Pandora's counsel represented that James would also be a part of the settlement. He further stated that counsel for Devon and Pandora later prepared a written settlement agreement and stipulations, which were sent to the parties.

¶ 22    The motion requested that the court

"enter an order enforcing the settlement agreement against Pandora Spirrison, and

pursuant to the parties' agreement enter: (i) an order of judgment of foreclosure

and sale on each of the Bank's mortgages against Pandora Spirrison for the full

amounts loaned and advanced; (ii) an order granting judgment to the Bank on

Pandora Spirrison's counterclaim; (iii) an order granting the Bank right of

possession against Pandora Spirrison; and (iv) such further order in conformance

with the parties agreement after the sale is completed, and as this Court deems

just and equitable."

¶ 23    On September 10, 2018, Pandora responded to Devon's motion to enforce the settlement agreement, stating that the Settlement Terms made clear that there was no obligation until Pandora negotiated and signed a settlement agreement, which had not been done yet. Pandora also argued that the proposed Settlement Agreement was materially different from the Settlement Terms in that it contained far more detail and imposed more obligations on the parties than that which were contemplated by the Settlement Terms. There were no affidavits filed in connection with Pandora's response.

¶ 24    The trial court heard the motion on October 9, 2018. There is no transcript of this hearing in the record on appeal. The trial court then continued the matter.

¶ 25    On December 5, 2018, the trial court entered an order stating: "This matter coming to be heard on Plaintiff's motion to enforce settlement against Pandora Spirrison (the "motion"), the court duly advised, it is hereby ordered: The motion is continued for hearing to December 20, 2018, at 11 a.m." We do not have a transcript of that hearing.

¶ 26    On December 20, 2018, the trial court entered an order that stated:

"This matter coming to be heard on Plaintiff's fully briefed motion to enforce settlement agreement against Pandora Spirrison, the court duly advised, it is hereby ordered:

Devon Bank's motion to enforce settlement agreement against Pandora Spirrison is granted, the court finding that the executed 'settlement terms' were agreed to by Pandora Spirrison and constitutes her binding agreement to settle this action.

Pandora Spirrison is ordered to comply with the settlement terms by no later than January 24, 2019.

This case is set for status on compliance to January 31, 2019. Should Pandora Spirrison fail to comply, the court will entertain a rule to show cause in this action."

¶ 27    On January 17, 2019, Pandora filed a motion to reconsider and vacate the trial court's December 20, 2018, ruling. She argued that the court's order granting Devon's motion to enforce an unsigned settlement agreement was inconsistent with the unambiguous language of the term sheet.

¶ 28    On January 28, 2019, Devon filed a petition for rule to show cause against Pandora as to why she should not be held in contempt of court for having "failed to comply with this Court's order enforcing the settlement agreement entered into between her and Devon Bank and requiring her compliance with the settlement terms by no later than January 24, 2019."

¶ 29    On March 20, 2019, Pandora filed a memorandum of law in support of her motion to reconsider the trial court's December 20, 2018, order. She stated that in granting Devon's motion

to enforce the settlement agreement, the court had indicated at the hearing that there were no affidavits opposing the motion or other fact issues. We do not have a transcript of that hearing.

¶ 30    Attached to the memorandum were affidavits from Pandora and her son Glenn Spirrison, In her affidavit, Pandora stated that no agreement was reached at the mediation, and that is why additional negotiations were referenced in the term sheet. She indicated that she signed the sheet because she "knew that further negotiations were going to occur and that I would have the opportunity to accept or reject the settlement agreement I was going to negotiate with Devon Bank." She stated that after the term sheet was signed, a proposed settlement agreement was circulated, but she did not sign it because it contained terms related to different properties that Pandora owned or formerly owned, not just the property in question. Pandora stated that she refused to sign the second Settlement Agreement because, "among other things, Devon Bank sought to be released from fraudulent conduct in connection with properties that are not specifically identified in this lawsuit."

¶ 31    On March 27, 2019, the court denied Pandora's motion to reconsider, and ordered her to appear in court for a show cause hearing on May 10, 2019.

¶ 32    On May 8, 2019, Pandora filed a motion for a finding of friendly contempt. In her motion, she stated that she respectfully disagreed with the court's decision to enforce the unsigned Settlement Agreement, especially since it was a different version that the first settlement agreement that was circulated after mediation. She asked to be found in friendly contempt relating to the compliance of the orders entered on December 20, 2018, and March 27, 2019, so that she could appeal to this court.

¶ 33    On May 10, 2019, the hearing was held on Devon's motion for rule to show cause. Pandora was not present. The trial court asked Pandora's counsel where she was, to which

counsel replied that she had filed the motion for a finding of friendly contempt so she could appeal the orders. Counsel for Devon noted that since the order enforcing the settlement was entered, there had been no compliance and that Pandora had filed a motion for leave to file an amended counterclaim "essentially re-litigating the whole case *** although earlier your Honor had dismissed those counterclaims, nevertheless, that was after you entered that order." The court responded that it "didn't dismiss all the counterclaims."  The court also stated:

> "The ruling was that – if I recall correctly, it was a motion to enforce that
>
> settlement agreement which was basically in exchange for $500,000 made payable
>
> to [Pandora], that she would consent to the foreclosure proceeding going forward
>
> and relinquish the house. It's as simple as that."

¶ 34    The trial court then stated that Pandora "has to be here. She has to be here. I want her in this courtroom. I demanded and ordered her to be here. She has to be here." The trial court did not agree that Pandora's motion for a finding of friendly contempt relieved her of her obligation to appear in court on the rule to show cause hearing. The trial court stated that it would give Pandora "one more opportunity to appear in court" and entered and continued the case.

¶ 35    On May 16, 2019, the hearing on the motion for rule to show cause took place with Pandora present in the courtroom. The court told Pandora that there was an order "entered against you to comply with the terms of a settlement agreement," and "based on your failure to comply with the terms of that settlement agreement the Court may find you in indirect civil contempt."  Counsel for Devon then asked Pandora if, since December 20, 2018, she had "signed any settlement documents." Pandora stated that she had not. Pandora's counsel asked her why she had not complied, and she stated "[b]ecause we were still in negotiation." She stated that she

11

asked the court to find her in friendly contempt because she did not agree with the court's December 20, 2018, order.

¶ 36 The trial court then stated that on December 20, 2018, the court "entered an order directing [Pandora] to comply with the terms of the settlement agreement entered into on October 3, 2017, by January 24, 2019." It also stated that Pandora failed to comply with the order "and settlement agreement," and Pandora's "failure to comply with the order is willful and contumacious." The court found Pandora in indirect civil contempt of court for "her willful failure to obey the Court's order as herein stated," and fined Pandora $50.

¶ 37 On that same date, the trial court entered an order denying Pandora's motion to be held in friendly contempt. Pandora now appeals the trial court's order finding her in indirect civil contempt of court for failing to obey the December 20, 2018, order that directed her to comply with the settlement agreement, as well as the May 16, 2009, order.

¶ 38                                    II. ANALYSIS

¶ 39 Generally, civil contempt occurs when a party fails to do something ordered by the trial court, resulting in the loss of a benefit or advantage to the opposing party. *In re Marriage of Coyne*, 2016 IL App (1st) 152494, ¶ 50. "Proof of willful disobedience of a court order is essential to any finding of indirect civil contempt." *In re Marriage of McCormick*, 2013 IL App (2d) 120100, ¶ 17. The burden initially falls on the petitioner to establish, by a preponderance of the evidence, that the alleged contemnor has violated a court order. *Id*. Once that burden is satisfied, the burden shifts to the contemnor, who has the burden of showing that the violation was not willful and contumacious and that she had a valid excuse for failing to follow the order. *Id*. "Contumacious conduct consists of 'conduct calculated to embarrass, hinder, or obstruct a court in its administration of justice or lessening the authority and dignity of the court.' " *In re*

*Marriage of Charous*, 368 Ill. App. 3d 99, 108 (2006). "Whether a party is guilty of contempt is a question of fact for the trial court, and a reviewing court should not disturb the trial court's determination unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." *McCormick*, 2013 IL App (2d) 120100, ¶ 17. A decision is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence. *Coyne*, 2016 IL App (1st) 152494, ¶ 50. Additionally, review of a contempt order necessarily requires review of the underlying order. *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 189 (1991). Therefore, our ruling on this appeal requires a review of the underlying December 20, 2018, order that granted Devon's motion to enforce the settlement agreement.

¶ 40    Pandora contends on appeal that because the Settlement Terms expressly stated that the parties intended to engage in further "negotiations" before signing a settlement agreement, there was no meeting of the minds and no contract to enforce. Devon maintains that the parties agreed to all material terms of the settlement and its motion to enforce the settlement was properly granted.

¶ 41    Pandora asks us to apply a *de novo* standard of review, while Devon argues that we should reverse the trial court's decision enforcing a settlement only if the decision was against the manifest weight of the evidence. This court has repeatedly held that "[w]hen presented with a challenge to a trial court's determination that parties reached an oral settlement agreement, a reviewing court will not overturn that finding unless it is against the manifest weight of the evidence." *K4 Enterprises, Inc. v. Grater, Inc.*, 394 Ill. App. 3d 307, 312 (2009); see also *Webster v. Harman*, 309 Ill. App. 3d 459, 460 (1999) (there was no record of what occurred at a

13

motion hearing to enforce a settlement, so there was no basis to find the trial court's decision that a settlement occurred was against the manifest weight of the evidence).

¶ 42    However, this court has noted that in *K4 Enterprises*, the trial judge possessed personal knowledge of the parties' settlement discussions and could draw on that knowledge to resolve the factual issue of whether the parties had agreed to settle. See *County Line Nurseries & Landscaping, Inc. v. Glencoe Park District*, 2015 IL App (1st) 143776, ¶ 30. In *County Line Nurseries*, this court noted that "the trial court was called upon to determine what happened outside of court on June 18 and to resolve conflicts in the parties' respective affidavits regarding those events." *Id.* ¶ 31. This court stated that neither party requested an evidentiary hearing, and therefore the standard of review as to whether the trial court's determination that the parties reached an enforceable contract was *de novo*. *Id.* ¶ 32.

¶ 43    Similarly here, the trial court was called upon to determine what happened outside of court at the mediation on October 3, 2017, and resolve conflicts in the parties' respective pleadings and affidavits regarding those events. Consequently, we believe that under these circumstances, we should apply a *de novo* review of the trial court's determination that the parties reached an enforceable settlement.

¶ 44    It is well-settled that a settlement agreement is in the nature of a contract and as such, its construction and enforcement are governed by the principles of contract law. *K4 Enterprises,* 394 Ill. App. 3d at 313. "Illinois encourages the settlement of claims and, to that end, settlement agreements may be oral." *Kim v. Alvey, Inc.*, 322 Ill. App. 3d 657, 669 (2001). For a valid contract to be formed, an " 'offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain.' [Citations.]" *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 29

(1991). A contract is sufficiently definite and certain if a court is enabled, from the terms and provisions thereof, to determine what the parties agreed to do. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 314 (1987). Further, "[a]n enforceable contract must include a meeting of the minds or mutual assent as to the terms of the contract." *Academy Chicago Publishers*, 144 Ill. 2d at 30.

¶ 45    "Although some terms of a contract may be missing or left to be agreed upon, the parties' failure to agree upon an essential term of a contract indicates that the mutual assent required to make a contract is lacking and, thus, there is no enforceable contract. *Rose v. Mavrakis*, 343 Ill. App. 3d 1086, 1091 (2003). "When any essential term of an agreement is left to future negotiation, there is no binding contract." *Hintz v. Lazarus*, 58 Ill. App. 3d 64, 67 (1978). "Whether the parties intended any condition as a term is a question of fact." *Kim*, 322 Ill. App. at 670.

¶ 46    In *Chicago Investment Corp. v. Dolins*, 107 Ill. 2d 120, 126-27 (1985), our supreme court explained:

> "The fact that parties contemplate that a formal agreement will eventually be executed does not necessarily render prior agreements mere negotiations, where it is clear that the ultimate contract will be substantially based upon the same terms as the previous document. [Citation.] If the parties *** intended that the *** document be contractually binding, that intention would not be defeated by the mere recitation in the writing that a more formal agreement was yet to be drawn. However, parties may specifically provide that negotiations are not binding until a formal agreement is in fact executed. [Citation.] If the parties construe the

execution of a formal agreement as a condition precedent, then no contract arises unless and until that formal agreement is executed."

¶ 47    In cases where courts have found that settlement terms were not binding, the terms contained specific language conditioning the agreement upon a future execution of a formal agreement. For example, in *Magnus v. Lutheran General Health Care System*, 235 Ill. App. 3d 173, 181 (1992), a letter of intent stated that each parties' "obligations hereunder are subject to and contingent upon the execution of the Purchase Agreement." The court held that this language "was unambiguous, indicating that no contract came into existence until the subsequent document was executed." *Id*. at 181. Similarly, in *Interway, Inc. v. Alagna*, 85 Ill. App. 3d 1094, 1096 (1980), the court held that a letter of intent was not a binding agreement because it stated, "[o]ur purchase is subject to a definitive Purchase and Sale Contract to be executed by the parties." The court noted that the term "subject to" showed, as a matter of law, that the parties did not intend for the letter or intent to be binding. *Id*. at 1099-1100. "Where the reduction to an agreement to writing and its formal execution is intended by the parties as a condition precedent to its completion, there can be no contract until then, even if the actual terms have been agreed upon." *In re Estate of Glassman*, 257 Ill. App. 3d 102, 107 (1993).

¶ 48    Here, the Settlement Terms state in the first paragraph that Devon "will pay the sum of $500,0000 to Pandora." The payment was to be made "one half upon Pandora's and James' *** execution of a fully drafted and *negotiated* settlement agreement, which will incorporate the terms of this term sheet ***." (Emphasis added.) While the Settlement Terms in this case do not expressly state that the execution of a written Settlement Agreement was a condition precedent to a valid contract being formed, the terms *do* state that Devon was not to pay Pandora until there was a fully drafted and *negotiated* settlement agreement. If the parties only meant for the

16

Settlement Terms to be made into a written agreement, without further negotiations, the word "negotiated" would be meaningless. See *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011) ("[a] court will not interpret a contract in a manner that would nullify or render provisions meaningless.")

¶ 49 The trial court nevertheless found, in its December 20, 2018, order, that "Devon Bank's motion to enforce settlement agreement against Pandora Spirrison is granted," and "the executed 'settlement terms' were agreed to by Pandora Spirrison and constitutes her binding agreement to settle this action." The court ordered her to comply with the "settlement terms" no later than January 24, 2019. However, because the Settlement Terms state that Pandora will not be paid the first half of the $500,000 Devon owes her until she signs the Settlement Agreement, it appears that the only way for Pandora to comply with the Settlement Terms would be to sign the Settlement Agreement despite Pandora's objections that it contained terms that were not agreed to by the parties.

¶ 50 Moreover, James was not present at the mediation and did not sign the Settlement Terms despite the fact that he was a necessary party to the contract, as evidenced by the fact that his signature was required on the Settlement Agreement that was circulated after the mediation. See *Crum v. Krol*, 99 Ill. App. 3d 651, 655 (1981) ("It is true that if a written contract by its terms is drafted as a mutual agreement among several parties, it must be signed by all parties in order to bind them, or it will not bind any party because the contract will remain uncompleted.").

¶ 51 Additionally, we note that the Settlement Terms constitute a one-page document that contains seven brief paragraphs. The Settlement Agreement that was subsequently drafted and circulated to Pandora is 8 pages long and contains 21 paragraphs, including a paragraph stating that Pandora "agrees that upon execution of this Agreement, she shall cause her Counter-

17

complaint, including all previously dismissed Counterclaims and her pending Count I for notary misconduct, to be dismissed with prejudice and without costs." One of the attached stipulations is entitled "Stipulation to Enter Orders of Judgment and Dismissal of Certain Counts." It states that James and Pandora each consented and agreed to an order of judgment of foreclosure and sale in favor of Devon on Counts I and II of Devon's complaint to foreclose the two mortgages in question. It also states that James and Pandora each respectively waive, release, and withdraw any and all affirmative defenses or other defenses to the enforcement of the 2008 mortgage, the 2008 note, the 2009 mortgage, and the 2009 note. It states that Pandora agrees to dismiss with prejudice, and without costs, her Second Amended Counterclaim, "including all previously dismissed claims and her pending Count I for Notary Misconduct."

¶ 52    Looking at the face of the Settlement Terms, in comparison with the face of the Settlement Agreement and stipulations, we see no mention of any counterclaims or claims of notary misconduct in the Settlement Terms. If the parties did indeed agree to this during mediation, and did not contemplate further negotiations, that should have been clear in the Settlement Terms. See *Martin v. State Farm Automobile Insurance*, 348 Ill. App. 3d 846, 855 (2004) (when the record indicates that the terms proposed are understood differently by the parties, there is no meeting of the minds and no contract exists between the parties).

¶ 53    Whether it was the intent of the parties to further negotiate settlement terms is a question of fact for the trial court to determine. Our supreme court has explained:

> "A circuit court must initially determine, as a question of law, whether the language of the purported contract is ambiguous to the parties' intent. [Citation.] If no ambiguity exists in the writing, the parties intent must be derived by the circuit court as a matter of law, solely from the writing itself. [Citation.] If the

18

terms of the alleged contract are ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a circuit court cannot properly determine on a motion to dismiss. [Citation.]." *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288-89 (1990).

¶ 54     Like any other contract, the essential terms of the settlement must be definite and certain for it to be enforceable. *Quinlan v. Stoufee*, 355 Ill. App. 3d 830, 837-38. "An evidentiary hearing regarding the formation and terms of a settlement agreement may be appropriate when there is a disputed issue on that point and additional evidence or testimony is required to satisfactorily resolve the issue." *City of Chicago v. Ramirez*, 366 Ill. App. 3d 935, 946 (2006). We find that this is one such case.

¶ 55     Accordingly, we reverse the trial court's order granting Devon's motion to enforce the settlement agreement and remand for an evidentiary hearing so that the trial court can make factual findings as to the parties' intentions and as to whether there was an enforceable contract. If the trial court finds an enforceable contract, it should make clear what the terms of that contract are, and which parties are bound to that contract.

¶ 56     As discussed above, the trial court held Pandora in indirect civil contempt for failing to comply with the December 20, 2018, order granting Devon's motion to enforce the settlement agreement. A finding of indirect civil contempt relies on the existence of a valid court order and willful disobedience of that court order. *McCormick*, 2013 IL App (2d) 120100, ¶ 17. Because we reverse the order entered on December 20, 2018, the finding of indirect civil contempt against Pandora for violating the order cannot stand and must be vacated. See *Sinkus v. BTE Consulting*, 2017 IL App (1st) 152135, ¶ 29.

¶ 57                              CONCLUSION

¶ 58    We reverse the circuit court's order of December 20, 2018, granting Devon's motion to enforce the settlement agreement, and remand for an evidentiary hearing. We vacate the circuit court's order of May 16, 2009, which found Pandora in indirect contempt of court and assessed a monetary penalty.

¶ 59    Reversed and remanded for an evidentiary hearing; contempt order vacated.