# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of McCormick*, 2013 IL App (2d) 120100

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF AMY K. McCORMICK, Petitioner-Appellee, and DAVID A. McCORMICK, Respondent-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0100 |
| Filed | August 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's finding of no contempt in respondent's second postdecree contempt proceedings based on petitioner's violations of the visitation order entered in the parties' dissolution action was affirmed, notwithstanding the fact that the appellate court reversed the trial court's finding of no contempt entered on respondent's first contempt proceeding based on allegations of similar violations, since the violations in the second proceeding were less severe and petitioner was under the reasonable belief that her behavior was not contemptuous until the finding in the first proceeding was reversed; however, in the future, petitioner should be aware that any new violations would be deemed contumacious. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 04-D-1073; the Hon. Joseph J. Bruce, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | David A. McCormick, of Yorkville, appellant *pro se*. |
| | |
| | No brief filed for appellee. |
| | |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Presiding Justice Burke and Justice Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1    Respondent, David A. McCormick, initiated his second postdecree contempt proceedings against his former spouse, petitioner, Amy K. McCormick, based on violations of an underlying visitation order. On his first postdecree contempt petition, the trial court entered a finding of no contempt. Amy continued to violate the visitation order, though it would be fair to characterize her subsequent violations as less severe. Therefore, the subsequent violations did not demonstrate a willful disrespect of the order, and we hold that the trial court did not err in entering a second finding of no contempt. This is so even though *this* court later determined that the trial court erred in denying the initial contempt petition. Accordingly we affirm.

¶ 2                  I. BACKGROUND

¶ 3    This appeal concerns the trial court's order, entered December 29, 2011, finding that Amy was not in contempt for conduct occurring between August 11, 2011, and October 26, 2011. However, an earlier violation period and contempt proceeding provides context to Amy's allegedly contemptuous behavior at issue in this appeal, and so we begin our recitation of the facts there.

¶ 4              A. Initial Contempt Proceeding:

Subject of *In re Marriage of McCormick*, 2013 IL App (2d) 110894-U

¶ 5    David filed a petition for rule to show cause on July 20, 2010, and an amended petition on January 14, 2011. In the amended petition, David alleged that Amy had repeatedly and willfully violated the visitation order. David, who lived 80 minutes away from Amy and their sons, alleged that he missed 43 visits with one son, 39 with another, and 19 with the third. The court asked David to present evidence of the incidents that seemed most serious to him.

¶ 6    The incidents included: (1) Amy allowed two of the boys to miss David's scheduled 2008 New Year's Eve celebration in favor of a sleepover with friends; (2) Amy allowed one of the

boys to miss an extended, two-week summer visit in favor of football practice; (3) Amy allowed two of the boys to miss a scheduled Easter visit in favor of sporting activities; and (4) Amy allowed one of the boys to miss a scheduled camping trip in order to participate in a dodgeball tournament, even though, due to the boys' recent vacation with Amy, David had not seen them in three weeks. Amy admitted to each of these incidents, essentially explaining that she felt the other commitments were important to the boys.

¶ 7      The trial court issued its finding on August 11, 2011. It found the parties' visitation problem to be one of the most difficult it had seen. It could not say that the problem was "all one party's fault." However, while it "didn't want to even say [that Amy was in] contempt [of court]," it would say that Amy went "overboard" in prioritizing the children's wishes over visitation with their father. The court did not find Amy to be in contempt.

¶ 8      David appealed the trial court's finding of no contempt. This court initially dismissed David's appeal as potentially premature, and David later perfected the appeal. See *In re Marriage of Knoerr*, 377 Ill. App. 3d 1042, 1049-50 (2007) (respondent may file a petition for rehearing and to supplement the record to establish that the appeal was not premature). Subsequently, on the merits, this court held that the trial court erred in its August 11, 2011, finding that Amy was not in contempt and we remanded for a determination on sanctions. *McCormick*, 2013 IL App (2d) 110894-U, ¶¶ 31, 35. We reasoned that Amy had admitted she violated the visitation order and that her rationale, primarily that the children had other commitments, established that the violations were willful. *Id.* ¶ 31. Moreover, we stated that the trial court "misled Amy by suggesting that she could legitimately second-guess the visitation schedule." *Id.* Our ruling was filed in April 2013, well after the 2011 time frame at issue in this appeal.

¶ 9                              B. Subsequent Contempt Proceeding:
                                      Subject of the Instant Appeal

¶ 10      After the trial court issued its first finding of no contempt, and while the first appeal was pending, the parties continued under a slightly modified visitation schedule. However, on three separate weekends, Amy "allowed" at least one boy to miss a visit. The oldest minor son, age 16, expressed resistance toward visiting David. On the weekend of September 4, 2011, which included Labor Day, he refused to visit David because he did not want to cancel his work shifts at a baseball stadium. That weekend was an important business weekend for the stadium. The son hoped to stay in good favor with his employer as he wanted to be rehired the next summer. Amy testified that she allowed him to attend work rather than visit David, because she understood that it was important to hold onto a job in a difficult economy. On September 10, 2011, and October 22, 2011, the son refused to visit David because he wanted to attend in-town activities with his friends. He complained to David via text message: "Whatever, Dad. Be as disappointed as [you] want. I've worked with you but I'm not going to sit and do nothing every Saturday night." Amy essentially testified that she was at a loss to get the son to cooperate with visitation and that she did not like to argue with him.

¶ 11      The middle son, age 14, also missed a visit on Labor Day weekend. The first day, Amy

drove him and a friend to Iowa to watch a football game. It is unclear from the record whether this trip constituted a missed visit or whether it was an agreed-upon event offered to provide context to the weekend. The second day, the son missed a visit to attend a tryout for a travel baseball team. When the son learned that the tryout conflicted with David's visitation, he cried and became very upset at the idea of missing the tryout. Amy decided to allow him to attend the tryout. Following the tryout, Amy did not drive the son to David's home for the last day of the weekend.

¶ 12    Based on these violations,[1] on September 14 and October 26, 2011, David petitioned for a second rule to show cause against Amy. The court heard the matter on October 26, 2011.

¶ 13    On December 29, 2011, the trial court entered a finding of no contempt. As to the oldest son, the court clarified that it had not intended for him to jeopardize his summer job, "particularly if [he] only had another couple weeks to go." Allowing the son to miss a visit for an important work weekend was not against the spirit of the visitation order. The court stated, however, that, as to the middle son, Amy should have arranged transportation to David's house after the tryout: "[T]hat's a problem. Okay?" But the court stated in general that, although Amy might have made some technical mistakes, she did not willfully violate the order. The court found that the children missed visits due to their own willfulness and that, while Amy might have been overly indulgent at times, there was very little to suggest that she was "the one responsible for the problems going on with the children not wanting to see [David] on the days in question." The court admonished David that there was "a limit to what [the courts and legal system] can do to try to solve the problems."

¶ 14    David appealed the trial court's December 29, 2011, finding of no contempt. As before, this court initially dismissed David's appeal as potentially premature, and David perfected the appeal. See *Knoerr*, 377 Ill. App. 3d at 1049-50.

¶ 15                                    II. ANALYSIS

¶ 16    David argues that the trial court erred when, on December 29, 2011, it entered a finding of no contempt for conduct alleged to have occurred between August 11, 2011, and October 26, 2011. Amy did not file an appellate brief. However, as the record is simple and the claimed errors are such that we can easily decide them without the aid of an appellee's brief, we proceed. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 17    Indirect contempt occurs outside the presence of the trial court. *In re Marriage of Tatham*, 293 Ill. App. 3d 471, 480 (1997). Proof of willful disobedience of a court order is essential to any finding of indirect civil contempt. *Id.* Once the petitioner establishes by a preponderance of the evidence that a violation occurred, the alleged contemnor has the burden of showing that the violation was not willful and contumacious and that he or she had

---

[1]David also complained that Amy did not provide him with the boys' coaches' contact information as directed. Amy provided David with only the web address for the league's website and the e-mail address of the league coordinators. David had tried to talk to the coaches at one game, but they were "unapproachable."

a valid excuse for failing to follow the order. *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107 (2006). Contumacious behavior consists of "conduct calculated to embarrass, hinder, or obstruct a court in its administration of justice or [conduct] lessening the authority and dignity of the court." (Internal quotation marks omitted.) *Id.* at 108. Whether a party is guilty of contempt is a question of fact for the trial court, and a reviewing court should not disturb the trial court's determination unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984); *cf. In re Marriage of Barile*, 385 Ill. App. 3d 752, 759 n.3 (2008) (applying the *Logston* standard despite the supreme court's general advisement against application of the abuse-of-discretion standard to findings of fact).

¶ 18    Here, again, the contempt period at issue followed an initial finding of no contempt for prior violations of the visitation order. Amy continued to violate the visitation order during this period. However, we think it fair to say that there was no increase in the frequency or severity of the violations and that, if anything, Amy demonstrated greater compliance than she had in the past. Following the close of evidence and the trial court's ruling on the violations during the period at issue, this court reversed the trial court's finding of no contempt as to the previous period. Thus, the question for this court becomes whether to: (1) review the violations in light of only the visitation order and, in keeping with our previous appellate ruling, consider reversing; or (2) review the violations in light of the trial court's initial ruling of no contempt, even though that ruling was later determined to be erroneous. We favor the latter approach.

¶ 19    In determining whether a party's violation of a court order constitutes contempt, the trial court may consider the procedural posture of the case as a context for the party's actions. See, *e.g.*, *In re Marriage of Kuhn*, 221 Ill. App. 3d 1, 4 (1991) (where the husband was in the process of exhausting attempts to obtain appellate relief, his admittedly willful and intentional failure to pay college expenses as ordered was not due to any disrespect of the court, and, therefore, contempt was too harsh a penalty). In other words, it is important to consider the party's frame of reference and feedback from the court at the time he or she committed the violation. The contempt period at issue here is August 11, 2011 (the date of the trial court's initial finding of no contempt), to October 26, 2011 (the date on which David filed the latter of his subsequent petitions). At the outset of this period, Amy was informed by the court that her *previous* behavior, including allowing the boys to miss more than 43 visits, several vacations, and significant holidays (New Year's and Easter), was *not* contemptuous. She reasonably continued to labor under this belief until April 2013, when this court ruled that the trial court had erred in entering its initial finding of no contempt. Still, her compliance with the visitation order improved somewhat. She allowed only three missed weekend visits, which included one holiday (Labor Day). Even on these missed visits, at least one of the three boys attended. In fact, had it not been for the conflict with the oldest son, Amy would have achieved a much higher degree of compliance. Particularly where, in its initial finding of no contempt, the trial court "misled Amy by suggesting that *she could legitimately second-guess the visitation schedule*," we cannot find that Amy willfully disrespected an order of the court between August 11, 2011, and October 26, 2011. (Emphasis added.) *McCormick*, 2013 IL App (2d) 110894-U, ¶ 31. Going forward and based

on our reversal of the initial finding in *McCormick*, 2013 IL App (2d) 110894-U, however, we expect that Amy is *now* aware that any new violations may be considered contumacious behavior.

¶ 20                                  III. CONCLUSION

¶ 21        For the aforementioned reasons, we affirm the trial court's finding of no contempt.

¶ 22        Affirmed.