**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 250368-U

Order filed December 22, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* The MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| DAMON WARREN, | ) | Du Page County, Illinois. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-25-0368 |
| and | ) | Circuit No. 21-D-1300, 21-OP-1072 |
| | ) | |
| KASHARA WARREN, | ) | Honorable |
| | ) | Neal W. Cerne, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BERTANI delivered the judgment of the court.
Justices Holdridge and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) Modification of the parenting plan to give mother equal parenting time was not in error when mother's move constituted a substantial change in circumstances and the court found the modification was in the best interests of the minor children; (2) no error occurred when the court chose not to consider bank statements father failed to admit into evidence; (3) the court improperly awarded mother decision-making responsibilities over professional acting jobs when the issue was not before the court.

¶ 2    Petitioner, Damon Warren, appeals the Du Page County circuit court's decision to modify

the parties' parenting plan giving respondent, Kashara Warren, equal parenting time, arguing that

Kashara's recent move was not a substantial change in circumstances and had been contemplated in the parenting plan. He also appeals the court's denial of his petition for rule to show cause and its decision to give Kashara decision-making authority over the children's employment activities. For the reasons that follow, we affirm in part and reverse in part.

¶ 3                                    I. BACKGROUND

¶ 4        This matter concerns allegations of contempt and parenting responsibilities following the entry of a 2023 judgment for dissolution of marriage. Damon appeared as a self-represented litigant for both the post-judgment proceedings and in this appeal.

¶ 5        Damon and Kashara were married for 15 years before Damon filed for dissolution on July 15, 2021. Three children were born from the marriage; they are all currently minors. Shortly after the case began, the court appointed Angel Traub as guardian ad litem (GAL) to offer a recommendation regarding parenting time.

¶ 6        A trial began in July 2023 and continued into the fall. On November 9, 2023, the circuit court issued a judgment for dissolution of marriage, a letter opinion addressing financial issues, and a parenting plan and allocation judgment. Both parents received joint decision-making responsibility for all major health, medical, and psychological decisions and Damon received sole decision-making authority for educational and extracurricular decisions. The court described the situation involving the extracurriculars as "[e]ach parent is very supportive of their children and the children have been actively involved in many extracurricular activities, including professional acting and competitive dance." It supported its decision to grant Damon sole decision-making responsibility over extracurriculars by noting that the parties could not agree on their children's activities. It further found that:

2

"the children have been actively involved in many arts-related extracurricular activities. However, under the current circumstances, the parents have demonstrated an inability to work together to choose, schedule, and/or transport the children to their activities. Mother wishes to have the girls continue to pursue their dancing, music and acting careers; Father seeks to have the girls be more 'well-rounded.' "

Specifically, the court found Damon did not agree with the children's heavy involvement in competitive dancing. No other description for what constituted an extracurricular activity is provided in the order.

¶ 7    In its factual findings, the court noted that Kashara lived in Oak Park, Illinois, while Damon lived in Naperville, Illinois. The children attended school in Naperville. The court also noted that Kashara refused to move back to Naperville but indicated she would do so if the court ordered that the children would primarily reside with Damon. It awarded Damon majority parenting time, and Kashara received time on alternating weekends and Tuesday and Thursday evenings. The order did not reference Kashara's statements regarding moving back to the Naperville area when making this decision.

¶ 8    The letter opinion found that Kashara had improperly removed funds from the accounts used to deposit the children's professional acting jobs and ordered her to repay the withdrawn amounts within thirty days. Once the funds were repaid, Damon and Kashara were to close the accounts and split the money equally between them. The opinion did not state how much money was removed from the accounts or how much Kashara was required to repay.

¶ 9    Shortly after the court issued its rulings, Kashara filed a motion to vacate or amend the parenting plan and allocation judgment. The court denied the motion. Six months later, on May 1,

2024, Kashara filed a petition to modify the parenting plan and allocation judgment pursuant to section 610.5 of the Illinois Marriage and Dissolution of Marriage Act (Act). 750 ILCS 5/610.5 (West 2024). She cited her move back to Naperville as a substantial change in circumstance that justified modification. She argued that her move from Oak Park to Naperville allowed her to spend more time with the children because there was significantly less travel time involved and asked the court to award her equal parenting time.

¶ 10   Also pending at this time was Damon's petition for rule to show cause requesting that the court find Kashara in contempt for her failure to repay the children's acting accounts, for attempting to enroll the children in a different school even though he had been awarded sole decision-making authority for their schooling, and for failure to pay child support. He also alleged that one child had recently received a paid dancing job and that Kashara arranged for payment of the job to be deposited into an account that was only accessible to the child when she turned 18. Damon argued that creating the new bank accounts and arranging for the payments to be deposited in them was in violation of the parenting plan and allocation judgment because he had sole decision-making authority over extracurricular activities. He alleged that, when he questioned Kashara's decision to do this, she stated that the child's paycheck was not an extracurricular activity, and he did not have decision-making authority over the payment for the jobs.

¶ 11   In response to Damon's petition for rule to show cause, Kashara stated that she had been behind on child support payments but was now up to date. Regarding enrollment in a different school, she argued that she did not attempt to enroll the children in another school, but merely got aptitude tests completed for the children, which she did not believe was prohibited under the court's orders. She also stated that she did not believe she violated the order regarding decision-making on extracurricular activities because where the children's wages were deposited was not

4

an "activity." She responded to Damon's allegations that she had not paid back the original funds in the children's accounts by stating she did not have the funds to make the necessary payments.

¶ 12    A hearing on all pending pleadings began on January 29, 2025. Kashara testified that she moved to Naperville in July 2024 and that her residence was a seven-minute drive away from Damon's home. She also changed jobs to a position that would allow her to be more present in the children's lives. She requested a modification of the parenting plan because she lived much closer and had the time to spend with the children.

¶ 13    On cross examination, Damon questioned Kashara regarding whether she considered the children's acting jobs extracurricular activities. Kashara responded that she did not view them as extracurricular activities because they were actual jobs that paid a wage. She also argued that the circuit court in the original judgment did not specifically list acting jobs as extracurriculars so she did not believe they should categorize them as such now.

¶ 14    Damon testified that Kashara currently had substantial visitation and that he did not restrict her time with the children. He conceded that the children wanted to be near their mother and that now that she lived closer the logistics were easier. However, Damon believed she would move again in the future and opposed reallocating time because of this belief.

¶ 15    Traub testified that the original schedule she had recommended was based on Kashara's Oak Park residence. At that time, Kashara lived too far away to reasonably create a schedule that could give her equal parenting time. Traub stated that modifying the parenting plan to give each parent equal parenting time would be in the children's best interests and in line with their wishes to spend more time with their mother. She stated that the reasons for this recommendation were included in her GAL report; that report has not been included in the record on appeal.

5

¶ 16 At the end of the hearing, the court indicated it would give an oral ruling that Kashara's attorney could memorialize in writing later. It ordered a 50/50 parenting schedule, noting that the parties now lived less than ten minutes apart. Regarding the children's paid acting jobs, the court found that the jobs were employment activities, not extracurriculars. It granted Kashara decision-making responsibility for employment decisions and payment from those jobs but required her to share all relevant information regarding the bank account with Damon. It denied Damon's request to find Kashara in contempt for her failure to repay the money taken from the children's accounts because the initial letter opinion did not provide a dollar amount that had to be repaid; therefore, the court did not know what was currently owed. On a later date, the court signed the written order drafted by Kashara's attorney.

¶ 17 Damon filed a motion to reconsider on March 28, 2025. He claimed that the court erred in making a *sua sponte* determination that Kashara should have authority over acting jobs and in deciding that it was not an extracurricular activity. He also challenged the court's decision to give Kashara equal parenting time. The court denied Damon's motion. This appeal followed.

¶ 18                                                II. ANALYSIS

¶ 19 On appeal, Damon raises several arguments challenging the court's decision on Kashara's motion to modify and his petition for rule to show cause. We will address each in turn.

¶ 20                                  A. Modification of the Parenting Plan

¶ 21 The first issue before us is whether the circuit court erred in modifying the parenting plan to give Kashara equal parenting time. The parenting plan and allocation judgment detailed that Damon shall be the residential custodial parent and have sole decision-making authority over educational and extracurricular activities. While the court noted that Kashara indicated she would move to Naperville if Damon received majority parenting time, it structured the plan based on

Kashara's residence in Oak Park and the travel time required at that location. The modified parenting plan created a schedule for Kashara to have equal parenting time because she had moved significantly closer to Damon and the children.

¶ 22 Damon appeals this decision, arguing that Kashara did not show a substantial change in circumstance that justified modifying the parenting plan. He contends that the court's acknowledgement that Kashara would move back to Naperville if he received majority parenting time demonstrated that the move was not a substantial change in circumstance or was otherwise unknown at the time of the original parenting plan.

¶ 23 Section 610.5(c) of the Act addresses modifications to the parties' parenting plan and allocation judgment. Specifically, it provides:

> "the court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment or were not anticipated therein, a substantial change has occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests." 750 ILCS 5/610.5(c) (West 2024).

Thus, two requirements must be met: (1) a substantial change in circumstance has occurred, and (2) a modification is in the best interests of the children. *In re Marriage of Virgin*, 2021 IL App (3d) 190650, ¶ 43. Damon argues that Kashara's move back to Naperville was already contemplated in the original order, and because it was already considered, cannot constitute a substantial change in circumstance. Whether a substantial change in circumstance has occurred is a factual determination that we will not reverse unless that decision is against the manifest weight

of the evidence. *In re Marriage of Trapkus*, 2022 IL App (3d) 190631, ¶ 31. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Nicholson v. Wilson*, 2013 IL App (3d) 110517, ¶ 22.

¶ 24    Damon's argument that the court already considered Kashara's potential move when creating the original parenting plan is misguided and unsupported by authority. Damon contends that the court specified the future event of Kashara moving when it created the original parenting plan, indicating it took the event into account when drafting the parenting schedule. However, a court may only implement a schedule based on current circumstances. *Virgin*, 2021 IL App (3d) 190650, ¶ 50 ("[A] schedule must be implemented based on the current circumstances."). While the court mentioned that Kashara indicated she would move if Damon was awarded majority time, it was in the context of her intention not to move back to Naperville at all. It would not be appropriate in this instance to create a schedule based on something that may happen sometime in the future but was not certain. See *id.* The court here simply stated that Kashara may move if Damon received majority parenting time and noted that there were no articulable plans for that future move. Thus, while acknowledging that Kashara may move at some time, the court created the parenting plan based on Kashara's current location. It did not place any conditions in the parenting plan that would indicate consideration of Kashara's potential move when allocating parenting time.

¶ 25    Damon also argues that Kashara did not establish that modifying the parenting plan was in the best interests of the children. The Act requires the court to consider 17 factors when determining if a modification would be in the best interest of the children, and Damon argues the court did not consider any of them. 750 ILCS 5/602.7(b) (West 2024). While the court must

8

consider all relevant factors when deciding whether a modification is in the children's best interests, it is not required to make any explicit findings for any particular factor. *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 43. Indeed, it is not necessary to reference those factors at all. *Id.* Instead, we may presume that the court knew the law and applied it appropriately unless the record indicates otherwise. *Id.*; *In re N.B.*, 191 Ill. 2d 338, 345 (2000).

¶ 26        The court order modifying the parenting plan and allocation judgment detailed that the GAL's report was comprehensive and based on the best interests of the children. While Damon failed to provide the report in the record on appeal, we may presume that it provided sufficient support for the court's finding. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record *** and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis."). Additionally, the testimony heard at the hearing indicated that the children wished to spend more time with their mother and that Kashara had moved and taken a new job to make it easier to see the children. We may presume that the court followed the law and considered all the necessary factors when modifying the parenting plan unless Damon can provide an argument to rebut it. *In re N.B.*, 191 Ill. 2d at 345. Damon can point to no statement or finding from the court that indicates it did not follow the law; thus, the presumption remains unrebutted.

¶ 27        Kashara's residence has changed since the parenting plan was set, constituting a substantial change in circumstances that was not present when the original schedule was created. The court drafted the original plan based on Kashara's residence in Oak Park and granted the modification based on her new location in Naperville. Accordingly, we do not find manifest error in the decision that Kashara's move constituted a substantial change in circumstance justifying a modification in

9

the parenting plan and allocation judgment. Additionally, the court found that equal parenting time was in the children's best interests, and we find nothing in the record to indicate that this decision was unsupported. We therefore find no error in the court's decision to modify the parties' parenting plan.

¶ 28                                 B. Rule to Show Cause

¶ 29       Next, Damon challenges the court's decision relating to his petition for rule to show cause. The letter opinion ordered Kashara to repay the funds that she removed from the children's acting accounts. After doing so, the parties were to close the accounts and split the funds equally. Damon alleged in his petition that Kashara never repaid the money she took. Damon now argues that the circuit court refused to let him introduce evidence in the form of bank statements to demonstrate how much money Kashara still owed. He contends the court did not permit him to refresh Kashara's recollection with the bank statements. It is important to note that he does not argue that the court erred in making its decision to deny his petition—only that it did not allow him to admit certain exhibits. We review a circuit court's evidentiary rulings for an abuse of discretion. *In re Leona W.*, 228 Ill. 2d 439, 460 (2008).

¶ 30       The original order requiring Kashara to repay the bank accounts did not contain a dollar amount that Kashara must deposit. The court, noting this, decided it would not enforce this order without knowing what those amounts should be. Damon argues that the bank statements he attempted to introduce would show how much Kashara needed to repay. The fatal flaw with this argument is that Damon failed to properly offer the statements to the court to admit the statements into evidence. Damon argues that he attempted to enter the bank statements into evidence when he tried to use them to refresh Kashara's recollection. However, the use of documents to refresh a witness's recollection does not alone admit them into evidence. See *Capsel v. Burwell*, 2024 IL

10

App (3d) 230170, ¶ 38. Damon made no other offer to admit the bank statements into evidence, and because of this error, the circuit court must exclude them from consideration in its ruling. *Jill Knowles Enterprises, Inc. v. Dunkin*, 2017 IL App (2d) 160811, ¶ 23 (following the "general rule that a document must be offered and admitted into evidence" before a court may consider it).

¶ 31     Damon also argues that the court could have taken judicial notice of the bank statements, citing Illinois Rule of Evidence 201(b) (eff. Jan. 1, 2011). This rule does not permit the court to review new evidence; it allows a court to take notice of facts that are not in dispute, either in the form of a court order or through a source that is readily accurate. *Id.* Damon provides no argument as to why the bank statements should be considered a record that is readily accurate and qualifies as a fact for which the court could take judicial notice. Further, Damon never asked the court to take judicial notice of the statements. "A party desiring to have a fact judicially noticed should bring the matter to the attention of the court, on the record." *People v. Clifton*, 11 Ill. App. 3d 112, 114 (1973). The court was not required to take notice of anything without such a request. *People v. Varnado*, 66 Ill. App. 3d 413, 419 (1978). Thus, even if the bank statements were records of which the court could take judicial notice, it was not required to do so because Damon never asked it to take notice of them. Thus, because Damon failed to properly present the bank statements to the court, he cannot now argue that the court improperly excluded them from consideration.

¶ 32     Moreover, the circuit court was correct in determining the judgment itself lacked a concise directive that could be enforced via contempt in that it failed to identify the amount to be restored to the account. See, *e.g.*, *People ex rel. City of Chicago v. Le Mirage, Inc.*, 2013 IL 113482, ¶¶ 66-67 (A circuit court's order must be clear, concise, and easily understood to support a finding of contempt.); *In re H.S.H.*, 322 Ill. App. 3d 892, 897 (2001) (If the court's order is unclear, one may not be punished for any perceived violation.). Contempt occurring

11

outside the circuit court's presence is considered indirect civil contempt. *Hursey v. Calhoun*, 2020 IL App (5th) 190276, ¶ 67. "Proof of willful disobedience of a court order is essential to any finding of indirect civil contempt." *In re Marriage of McCormick*, 2013 IL App (2d) 120100, ¶ 17. Whether a party is guilty of contempt is a question of fact left to the circuit court's determination. *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶ 38. We will not disturb this determination unless it is against the manifest weight of the evidence or the record indicates an abuse of discretion. *Id.*

¶ 33       The court here correctly noted that it could not enforce the prior order because it did not clearly set out what Kashara must do to replenish the accounts. The need for Damon to resort to bank records to argue the amount in question is illustrative of those shortcomings. Given the lack of a clear directive in the original judgment, the court did not err in declining to enforce the order's provisions via indirect civil contempt.

¶ 34                      C. Acting as an Extracurricular Activity

¶ 35       Finally, Damon argues that the court improperly entered an order *sua sponte* that gave Kashara decision-making authority over the children's acting and the payments for those jobs. Damon argues which parent had decision-making authority over professional acting jobs was not before the court because it was not raised in any of the pleadings being argued. The motions before the court were for modification of the parenting plan and his petition for rule to show cause alleging that Kashara violated the original order by diverting the children's payment for jobs into a new bank account, not who should have decision-making authority over those activities. Moreover, Damon already had decision-making authority over extracurricular activities, and the children's acting jobs should remain categorized as an extracurricular activity.

12

¶ 36    Both parties agree that neither specifically requested a ruling of whether the acting jobs constituted extracurricular activities. Generally, if an issue is not presented to the court through the filing of proper pleadings, the court cannot on its own adjudicate the issue. *Suriano v. Lafeber*, 386 Ill. App. 3d 490, 492 (2008); *Ligon v. Williams*, 264 Ill. App. 3d 701, 707 (1994 ("[W]here no justiciable issue is presented to the court through proper pleadings, the court cannot adjudicate an issue *sua sponte*."). Without the proper pleadings requesting such relief, the parties are deprived of their right to notice and an opportunity to be heard. *In re Custody of Ayala*, 344 Ill. App. 3d 574, 586 (2003).

¶ 37    Section 610.5(a) of the Act provides that:

> "no motion to modify an order allocating parental decision-making responsibilities, not including parenting time, may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his or her mental, moral, or physical health or significantly impair the child's emotional development." 750 ILCS 5/610.5(a) (West 2024).

Damon argues that because two years had not passed and there was no reason to believe the children were endangered without modifying the original order, the court could not modify parental decision-making responsibilities as provided for in the original order. See *id.* We agree. The absence of any motion seeking modification of parental responsibilities, let alone including the requisite affidavit establishing serious endangerment, precluded the court from addressing the issue.

¶ 38    Alternatively, Kashara argues that, while not directly raised in a pleading, the court could award her decision-making responsibilities over the children's acting jobs because the issue was

13

discussed during the hearing. See *In re Marriage of Hochleutner*, 260 Ill. App. 3d 684, 689 (1994) (The conduct of the parties and introduction of evidence on issues during a hearing precludes a party from objecting that an issue was not formally raised in the pleadings.); see also *Nerini v Nerini*, 140 Ill. App. 3d 848, 851 (1986) ("Where a party proceeds with the case as though his adversary's pleadings joining issue were on file, he waives the adversary's failure to plead."). By introducing the discussion during Kashara's cross-examination, she argues Damon "opened the door" for allowing the court to decide whether acting was an extracurricular and who should have decision-making authority over those activities.

¶ 39     Kashara also argues that the parenting plan and allocation judgment did not categorize acting jobs as an extracurricular activity and did not assign either parent decision-making authority; thus, it was appropriate for the court to award her those responsibilities when the issue was raised in the context of Damon's petition for rule to show cause. She also argues that the court did not include acting jobs in the original order because the parties could not agree on whether it was an extracurricular activity. However, it is the court's role to resolve those conflicts between the parties through its rulings. It would be illogical for the court to decline to rule on an issue that created such conflict for the parties. Contrary to Kashara's reading of the parenting plan and allocation judgment, it is clear that the court included the children's professional careers as an extracurricular activity. The order explicitly included "professional acting and competitive dance" in its description of what constituted an extracurricular activity. It is with this in mind that we examine the court's ruling.

¶ 40     The matter before the court related to Damon's allegations that Kashara made unilateral decisions regarding the children's employment by creating new bank accounts for their paychecks. The issue was not whether the acting jobs were extracurricular activities, but whether depositing

14

paychecks into a bank account was an action in decision-making for that activity. In the prayer for relief, Damon requested that the court find that managing the bank accounts was the responsibility of the parent with decision making authority. We cannot construe this request and the arguments that followed at the hearing as a request to modify the parenting plan to separate acting jobs from extracurricular activities and to allocate decision-making responsibilities for them. Thus, Damon did not receive notice that the court might take away any of his decision-making responsibilities at the conclusion of the hearing on his petition for rule to show cause. See *Ayala*, 344 Ill. App. 3d at 585; *City of Chicago v. American National Bank and Trust Co. of Chicago*, 171 Ill. App. 3d 680, 688 (1988). Given that no pleadings requested the court allocate the responsibility of the acting jobs to a parent and Damon had no notice that the court would decide this issue, he had no opportunity to be heard on the matter. See *City of Chicago*, 171 Ill. App. 3d at 688. Therefore, the court exceeded its role in awarding Kashara decision-making responsibility over the children's acting, and we must reverse this ruling. *Id.*

¶ 41                                    III. CONCLUSION

¶ 42        The judgment of the circuit court of Du Page County is affirmed as it relates to its modification of the parties' parenting plan and the denial of Damon's petition for rule to show cause. We reverse the court's decision to allocate decision-making responsibilities for the children's professional acting jobs to Kashara, as that issue was not properly brought before the court to decide.

¶ 43        Affirmed in part, reversed in part.

15