NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250646-U

NO. 4-25-0646

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 27, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| JUDD R. GIFFIN, | ) | Circuit Court of |
|     Petitioner-Appellee, | ) | Peoria County |
|     and | ) | No. 13D135 |
| AMY M. GIFFIN, | ) | |
|     Respondent-Appellant. | ) | Honorable |
| | ) | Suzanne L. Patton, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Doherty and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed in part and reversed in part, holding the trial court did not abuse its discretion in (1) modifying child support retroactive to October 2023 and (2) finding respondent in indirect civil contempt for failing to comply with court orders governing child support, out-of-pocket expenses for the children, and refinancing the marital home. However, the trial court did abuse its discretion in finding respondent in indirect civil contempt for failing to obtain employment after 2019. The cause is remanded for the trial court's reconsideration of its May 12, 2025, order, in light of our holding. Respondent forfeited her argument about the 2014-15 taxes and attorney fees and costs.

¶ 2    This case began in 2013, meaning the parties have been litigating their divorce for over a decade. Four of their five children are now adults and the fifth is on adulthood's doorstep. The trial court entered a judgment for dissolution of marriage in July 2016, but within two months, the parties returned to court for resolution of new grievances. Apart from a brief ceasefire from 2020 to 2022, the parties have bombarded each other and the trial court with various filings, alleging myriad recriminations, seeking reprisals, and prompting numerous court

orders. Relevant here is respondent Amy M. Giffin's October 2022 motion to modify child support and parenting time. Petitioner, Judd R. Giffin, responded by filing a petition for rule to show cause, alleging five counts when Amy willfully failed to obey court orders and seeking to have her held in contempt and compelled to comply with prior mandates. On May 12, 2025, the court issued two orders modifying child support retroactive to October 2023, granting Judd's petition to show cause, and holding Amy in contempt on four of the five counts. Amy appealed.

¶ 3                                    I. BACKGROUND

¶ 4          Judd and Amy married on August 10, 1996, in Peoria County, Illinois. The marriage produced five children between 1999 and 2008. Judd petitioned for divorce in March 2013, and the trial court eventually entered a judgment for dissolution of marriage on July 27, 2016. In addition to dissolving the marital bonds, the court addressed parenting time, child support, child-related expenses, spousal maintenance, and property division. Important to this appeal, the judgment required the parties to equally divide expenses related to the children's out-of-pocket medical and dental care. Per the judgment, Judd was required to pay Amy spousal maintenance. "[A]s a condition of spousal maintenance," however, Amy was "ordered to seek and accept any part time (at least 20 hours) or full time employment as a certified public accountant." The judgment set parameters for Amy's job search and required her to document her progress. The judgment awarded the marital residence to Amy and ordered her to, "[u]pon *** obtaining employment, *** seek refinancing to pay off the first and second mortgages so as to eliminate [Judd's] liability thereon." Finally, the judgment ordered the parties to "equally divide any federal or state income tax" refunds or liabilities for 2014 and 2015.

¶ 5          A few weeks later, Judd filed a petition for order to show cause, claiming Amy "intentionally failed and refused to make any effort whatsoever to commence her job search,"

despite the [trial] court's order to do so. On October 4, 2016, following a hearing, the court found Amy "to be in civil contempt on account of her failure to seek employment" but provided she could purge the contempt "by commencing compliance with the job search requirements as previously ordered."

¶ 6        On November 10, 2016, the trial court entered an agreed modification order, wherein "all claims for maintenance by either party against the other are forever barred effective October 1, 2016." Accordingly, per the order, "Amy [was] no longer obligated to seek employment as a condition to receiving maintenance." Amy, therefore, purged the October civil contempt finding. This order continued to require Judd and Amy to equally divide their children's health expenses not covered by insurance and required them to "cooperate and work together as expeditiously as possible to accomplish the filing of joint income tax returns for 2014 and 2015 with the assistance of their professional [tax] advisor."

¶ 7        Over the next few years, the parties further litigated parenting time and child support. On February 14, 2019, the trial court entered an order on child support, finding Amy "lost her employment on or about November 16, 2018, and she is not voluntarily unemployed." The court found Amy's past child support obligation to be $182.77 per week from December 4, 2017, to November 16, 2018. From November 16, 2018, and moving forward, the court set Amy's child support obligation at $120 per month. The court ordered Amy to pay $120 per month beginning February 1, 2019, and ordered her to pay $9,498.50 in child support arrearages in increments of $28 per month. Finally, the court's order provided:

> "[Amy] shall seek employment and apply for at least 3 jobs per
> week, she shall provide a written log or memorandum to [Judd's]
> attorney, *** bi-weekly showing her job search, and she shall

notify in writing [Judd's] attorney within 3 days of her obtaining employment with the name, address, and telephone number of the employer."

¶ 8        In 2018 and 2019, the parties also addressed outstanding issues from the 2016 judgment. Namely, the trial court found Amy to be in indirect civil contempt, in part, for her failure to seek refinancing for the marital residence, as well as her failure to provide written documentation of her efforts to refinance the property. The parties also addressed their 2014-15 income taxes. The court granted Judd's motion for permission to file married, filing separately income tax returns for 2014 and 2015 and ordered the parties to split 50/50 the tax liabilities or refunds for those years.

¶ 9        By March 2019, Judd again moved for a finding of indirect civil contempt against Amy, alleging she failed to comply with the February 14, 2019, order that she pay child support and seek employment. Following a hearing on April 9, 2019, the trial court held Amy "in contempt of court due to failure to notify [Judd's attorney] of job search efforts or lack thereof." The court ordered that if Amy had "not secured employment by [May 9, 2019], she shall have filed for Social Security Disability and present a letter from a medical professional stating that [she] should not be working." When the parties reconvened before the court on May 9, 2019, for a compliance review, the court's order found: "Amy Giffin has not secured employment to date. She shall apply for Supplemental Security Income (SSI) benefits within thirty (30) days, and shall send a copy of her SSI application (with health information redacted) to [Judd's attorney] within seven (7) days of filing same." The court's order noted Amy "presented evidence that she does not qualify for social security disability, and a letter from her doctor stating that she is unable to work at this time."

¶ 10    The parties appeared before the trial court again on June 24, 2019, for a status review of Amy's unemployment and SSI, as well as on Judd's motion to require Amy to pay her share of the 2014-15 income taxes. The court found Amy "remains unemployed" and "has not filed for SSI and did not contact the Social Security Administration until *** June 21, 2019." The court ordered Amy to apply for SSI and provide a copy of the application to Judd's attorney. The court also addressed the parties lingering income tax issue, finding Amy "responsible for one-half (1/2) of the 2014 and 2015 Federal and State income tax liability of *** Judd." It entered judgment against Amy for her share of the income tax liabilities.

¶ 11    Amy applied for Social Security disability insurance benefits on July 25, 2019, and she presented a copy of the application to Judd and the trial court during their August 2019 court appearance. At the status review hearing on November 1, 2019, Amy provided a letter stating "her initial SS claim was denied." The court ordered Amy to appeal the denial and encouraged her to retain counsel to assist her in the appeal process. Aside from an order prohibiting the parties from speaking negatively about each other in the children's presence, the case lay dormant for nearly three years.

¶ 12    On October 28, 2022, Amy moved to modify parenting time and child support, alleging substantial changes in circumstances. Amy's motion claimed, "That since approximately March of 2020, the parties have been following a 50/50, or near 50/50 parenting time schedule." Judd responded to Amy's motions and filed a petition for rule to show cause. His petition alleged five counts of Amy's willful noncompliance with prior court orders, namely: count I, refusal to obtain employment; count II, failure to pay child support; count III, failure to contribute to out-of-pocket medical expenses; count IV, refusal to pay expenses related to the marital residence; and count V, violation of the tax-related provisions. The parties began negotiating a settlement

and eventually agreed on a modified parenting plan. The trial court entered an order approving the new parenting plan agreement on October 6, 2023. On July 30, 2024, Amy filed a response to the rule to show cause, denying many of the allegations and invoking the defense of equitable estoppel.

¶ 13 Amy's motion to modify child support and Judd's petition for rule to show cause were heard on April 7, 2025. Judd and Amy testified, as did Judd's father, David Giffin. The trial court allocated much of the hearing to the income tax and marital home issues. After a daylong hearing, the court instructed the parties to submit written closing arguments and proposed orders.

¶ 14 The trial court entered its decision on May 12, 2025, granting Amy's motion to modify child support and Judd's petition for rule to show cause. The court entered two orders— one appeared to be Judd's proposed order and the other a supplement written by the court, though the court adopted much of Judd's arguments and rationale.

¶ 15 Concerning child support, the trial court found a substantial change in circumstances and ordered Judd to pay $369 per month from October 2023 to June 2024 and $252 per month from July 2024 to June 2026. The court found Amy "has not been diligent in seeking employment" and imputed income to her of $7,162.66 per month.

¶ 16 As for the petition for rule to show cause, the trial court found Amy was in indirect civil contempt on four of the five counts, namely, counts I through IV. The court order permitted Judd to purchase the marital residence and set the selling price, accounting for the home's value, the mortgages, and each party's liabilities to the other. The court declined to find Amy in contempt on count V, the income tax issue. It nevertheless ordered "Amy to pay $2,524.00 for her half of the 2014 and 2015 state tax liability." It ordered Judd to file his federal income tax returns for 2014 and 2015 and ordered the parties to divide equally the tax liabilities.

Finally, the court ordered Amy to pay Judd's attorney fees.

¶ 17 This appeal followed.

¶ 18 II. ANALYSIS

¶ 19 On appeal, Amy, proceeding *pro se*, challenges the trial court's orders on five grounds, alleging the following: (1) the court erred by not modifying child support retroactive to the date of Amy's motion, (2) the court erred in rejecting her equitable estoppel affirmative defense, (3) the court erred in finding her in indirect civil contempt on counts I through IV, (4) the court erred in calculating and assigning the tax liability to Amy, and (5) the court erred in ordering her to pay costs and attorney fees. As we will explain below, we affirm in part, reverse in part, and remand for further proceedings consistent with this order.

¶ 20 A. Retroactivity

¶ 21 Amy argues the trial court abused its discretion in modifying child support retroactive to October 6, 2023, rather than the date she filed her motion, October 28, 2022. We disagree. Illinois law allows the trial court to "retroactively modify a child support award to the date of the filing of the petition to modify." *In re Marriage of Boland*, 308 Ill. App. 3d 1063, 1067 (1999). But this decision rests purely within the trial court's discretion. *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 106 (1995). This means the court may decide "to award or not to award child support on a retroactive basis." *In re Marriage of Abu-Hashim*, 2014 IL App (1st) 122997, ¶ 37. We review that decision for an abuse of discretion. *Boland*, 308 Ill. App. 3d at 1066. A court abuses its discretion when no reasonable person would agree with the position taken by the trial court. *In re Marriage of Jessica F.*, 2024 IL App (4th) 231264, ¶ 36.

¶ 22 The trial court gave no rationale for its decision to modify child support retroactive to October 2023 rather than October 2022. The order merely noted it adopted Judd's

position. Judd's written closing argument gave two alternatives for retroactivity, either order "no retroactivity[ ] *** in light of Amy's refusal to seek and obtain employment" or "order a small amount of retroactivity" since parenting time "was not resolved until the entry of the Agreed Modified Parenting Plan on October 6, 2023." Faced with no explanation, we surmise the court agreed with the second alternative and found it appropriate to modify child support retroactive to when the parties agreed to a new parenting plan. While we do not endorse the court adopting wholesale Judd's proposed resolution without providing any reasoning, considering the record before us, we cannot say that ultimate decision is unreasonable or, in other words, that no reasonable person would agree with the retroactivity determination. See *Jessica F.*, 2024 IL App (4th) 231264, ¶ 36.

¶ 23                                B. Estoppel

¶ 24        Amy next argues the trial court erred in rejecting her estoppel argument as a defense against indirect civil contempt. Specifically, she contends "the trial court erred in its interpretation and application of the legal principle of estoppel in finding [her] in contempt as to counts I-IV of the December 2022 petition for rule to show cause." We disagree.

¶ 25        The trial court did not directly address Amy's estoppel argument in either order it entered. The order presumably drafted by the court noted it had "considered the evidence presented, the matters appearing in the court file, and the arguments of the parties." It further explained, "To the extent that these [factual] findings differ from any party's position, that is the result of determinations by the court as to credibility and relevance, burden of proof considerations, legal principles, and the weighing of the evidence, both oral and written." Even though the court failed to articulate its precise reasoning for rejecting Amy's estoppel defense, we can still affirm its decision. We presume the trial court knows and follows the law. *Jessica F.*,

2024 IL App (4th) 231264, ¶ 51. Amy's brief provides no compelling reason for us to find the court either misinterpreted or misapplied estoppel—especially since it is unclear if Amy invoked equitable estoppel or promissory estoppel. She cited no Illinois law and relied, instead, on secondary sources like the Restatement (Second) of Contracts. More importantly, neither Amy's brief here nor the record below reveals how she met her burden for establishing estoppel as an affirmative defense.

¶ 26    Equitable estoppel and promissory estoppel are not coterminous legal principles. *Dickens v. Quincy College Corp.*, 245 Ill. App. 3d 1055, 1062 (1993). "The elements of promissory estoppel are (1) an unambiguous promise; (2) reliance on such promise by the promisee; (3) the promisor expects and foresees such reliance; and (4) the promisee relies on the promise to her injury." *In re Marriage of Schmidt*, 292 Ill. App. 3d 229, 240 (1997). By contrast, the equitable estoppel elements include:

> "(1) words or conduct amounting to misrepresentation or concealment of material facts; (2) knowledge on the part of the person against whom the estoppel is asserted that the representations were untrue; (3) the truth of the representations must be unknown to the party asserting the estoppel; (4) the party making the representations must reasonably expect they will be acted upon by the party asserting estoppel or the public generally; (5) the party asserting the estoppel must have relied upon the conduct or representations in good faith; and (6) the party asserting the estoppel must have so acted because of such representations or conduct that she would be prejudiced if the first party is permitted

to deny the truth thereof." *Schmidt*, 292 Ill. App. 3d at 241. The record confirms Amy failed to prove all the elements of either promissory estoppel or equitable estoppel.

¶ 27 At the hearing, Amy based her estoppel argument on her testimony that Judd never asked her to pay for out-of-pocket expenses, Judd offered to pay her living expenses from 2020 to 2022, Judd never asked her to pay court-ordered child support, and Judd's text message told her he was done with court. Amy reasoned, "At this point in time, his representation to me is he is done with court. There's going to be no more court. That to me does go to estoppel." Amy confuses obvious frustration and resignation with an agreement.

¶ 28 As for promissory estoppel, Amy did not prove an unambiguous promise from Judd that she need not comply with prior court orders. She relies, in part, on Judd's silence on child support and medical expenses. While estoppel may arise from silence, the silent party must have had both the duty and opportunity to speak yet did not. *Town & Country Bank of Springfield v. James M. Canfield Contracting Co.*, 55 Ill. App. 3d 91, 95 (1977) (citing Chancery Pleading and Practice § 675, at 1372 (7th ed. 1930)). Estoppel " 'can arise by silence only where there is knowledge of the facts on one side and ignorance on the other; if the means of knowledge are equally open to both parties, there can be no estoppel.' " *Town & County Bank of Springfield*, 55 Ill. App. 3d at 95 (quoting Chancery Pleading and Practices 675, at 1372). When there existed court orders requiring Amy to pay child support and share her children's expenses, she cannot claim lack of knowledge. Moreover, Judd had no duty to speak, as the orders speak for themselves. See *In re Marriage of Bjorklund*, 88 Ill. App. 3d 576, 580 (1980) ("We do not agree that respondent could justifiably rely on petitioner's relative silence on this matter in light of the existence of the divorce decree which provided for the payment of support to petitioner.").

Likewise, neither Judd's statement in frustration that he was done with court nor his offer to pay Amy's bills for two years amount to an unambiguous promise to dispense with court-ordered obligations. First, there is no promise by Judd. Second, Amy was well aware of her obligations and sought no clarification on what Judd meant by those statements.

¶ 29　　　　As for equitable estoppel, Amy failed to prove any of the necessary elements. Notably, the record shows she knew of her obligations under prior court orders, even if Judd never reminded her of them. See *In re Marriage of Betts*, 155 Ill. App. 3d 85, 102 (1987) ("[E]quitable estoppel cannot be created based solely on the petitioner's failure to make a demand for child support upon the respondent over several years, or upon the fact she allegedly never brought up the issue of child support."). Even with the ambiguity in Amy's argument, we clearly see in the record that she failed to meet any of the necessary elements set out above to establish estoppel in any form as an affirmative defense. We affirm the trial court.

¶ 30　　　　　　　　　　　　C. Indirect Civil Contempt

¶ 31　　　　Amy's next argument challenges the trial court's indirect civil contempt findings against her. Judd's petition for rule to show cause alleged five counts of contempt where Amy willfully disobeyed court orders regarding obtaining employment (count I), paying child support (count II), contributing to the children's out-of-pocket medical expenses (count III), paying expenses related to the marital residence (count IV), and violating the tax-related provisions (count V). On appeal, Amy argues the court misinterpreted and misapplied the prior court orders and the evidence when finding her in indirect civil contempt on counts I through IV. We agree with her as to count I but disagree on the remaining counts.

¶ 32　　　　"Generally, civil contempt occurs when a party fails to do something ordered by the trial court, resulting in the loss of a benefit or advantage to the opposing party." (Internal

quotation marks omitted.) *In re Marriage of Vickers*, 2022 IL App (5th) 200164, ¶ 63. It is a well-worn principle that "[c]ourts have the inherent power to use contempt proceedings to enforce their orders [citation], but such power is limited to cases of willful refusal to obey the court's order." *Smith v. Intergovernmental Solid Waste Disposal Ass'n*, 239 Ill. App. 3d 123, 146 (1992). Willfulness is paramount. "Merely because a party has not complied with a divorce decree or a court order is not a sufficient basis for holding that party in indirect contempt of court." *In re Marriage of Tatham*, 293 Ill. App. 3d 471, 480 (1997). Consequently, "[p]roof of willful disobedience of a court order is essential to any finding of indirect civil contempt." *In re Marriage of McCormick*, 2013 IL App (2d) 120100, ¶ 17. In contempt proceedings, "[o]nce the petitioner establishes by a preponderance of evidence that a violation occurred, the alleged contemnor has the burden of showing that the violation was not willful and contumacious and that he or she had a valid excuse for failing to follow the order." *McCormick*, 2013 IL App (2d) 120100, ¶ 17.

¶ 33        Assessing willfulness looks beyond the alleged contemnor's conduct; it requires the court to consider the order itself. The order must be clear. We have said a person "is entitled to know with precision exactly what [she] is required to do, or not do, before [she] can be restrained or held in contempt." *In re Marriage of Miller*, 108 Ill. App. 3d 63, 67 (1982). Indeed, "the law requires that for a finding of contempt to be based on a violation of an order of the court, the order's terms must be set out with certainty, clarity, and conciseness." *In re Johnson*, 134 Ill. App. 3d 365, 377 (1985).

¶ 34        We review a trial court's contempt finding for an abuse of discretion. *Banister v. Partridge*, 2013 IL App (4th) 120916, ¶ 54. A court abuses its discretion when its decision "is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted

by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 35                                    1. *Finding Employment*

¶ 36        The issue of Amy's employment predominated this litigation early and has since gone dormant. Nevertheless, Judd sought, and the trial court granted, a contempt finding for Amy's failure to secure employment. We find this decision arbitrary or unreasonable because Amy was not under a clear order to seek employment after May 2019.

¶ 37        As outlined above, the July 2016 judgment of dissolution ordered Amy, "*as a condition of spousal maintenance \*\*\** to seek and accept any part time (at least 20 hours) or full time employment as a certified public accountant." (Emphasis added.) Less than two months later, the trial court found Amy "to be in civil contempt on account of her failure to seek employment" and "abated" Judd's maintenance obligation. By November 2016, Amy purged the contempt by joining the agreed modification order wherein she waived any further claims for maintenance in exchange for her employment obligations to cease.

¶ 38        Amy, nevertheless, secured employment in the accounting field, but she lost her job on November 16, 2018. The trial court did not address Amy's employment for several years. Not until a February 14, 2019, order addressing child support obligations did the court again order Amy to seek employment. Mirroring the 2016 judgment, this order required Amy to seek and obtain a job. Judd again sought and secured a contempt finding against her The court's order provided that if Amy "has not secured employment by the review date [(May 9, 2019)], she shall have filed for Social Security Disability and present a letter from a medical professional stating that [she] should not be working."

¶ 39        On May 9, 2019, the trial court found Amy had not secured employment and did not qualify for disability benefits; however, she submitted a letter from her doctor stating that she

was unable to work at that time. The court then ordered her to apply for SSI within 30 days and submit a redacted copy of the application to Judd's counsel within 7 days of filing it. It issued a similar order on June 24, 2019.

¶ 40　　　　Amy eventually complied with the trial court's May and June 2019 orders. She applied for SSI on July 25, 2019, and provided a copy to Judd's counsel in open court in August. When the parties reconvened for a status hearing on November 1, 2019, Amy reported her SSI application was denied. The court ordered her to appeal the SSI claim, and it urged her to retain counsel for that appeal. No court order addressed Amy's employment, or lack thereof, from November 2019 to May 2025.

¶ 41　　　　Based on this record, we cannot affirm the trial court's decision. Mere noncompliance is not enough; there must be a willful refusal to follow the court's orders. See *Tatham*, 293 Ill. App. 3d at 480; *Smith*, 239 Ill. App. 3d at 146; *McCormick*, 2013 IL App (2d) 120100, ¶ 17. Willful refusal to follow a court order depends upon there being a clear order to follow. *Miller*, 108 Ill. App. 3d at 67. By its own terms, the court's decision did not take into account the orders entered after February 2019. Notably, in none of those orders did the court clearly require Amy to seek or obtain employment. On the contrary, the post-February 2019 orders confused and complicated Amy's employment obligations. For example, she was ordered to apply for disability benefits and submit a doctor's note saying she cannot work—actions incompatible with seeking and obtaining employment. Amy complied with those orders. The record reveals Amy's employment obligations began, ended, restarted, and ended again as this case has dragged on through the years. Judd previously won contempt findings against Amy on this issue when prior orders still predominated. But the July 2016 employment requirement ended in November 2016 and, likewise, the February 2019 mandate ended (or at least became

- 14 -

unclear) in April and May 2019. Consequently, we hold the court abused its discretion in finding Amy in indirect civil contempt on count I. See *Banister*, 2013 IL App (4th) 120916, ¶ 54. Since there was no clear, concise, certain mandate in place after April 2019, we find no reasonable person would agree with the court's determination that Amy willfully disobeyed court orders to secure a job. *Seymour*, 2015 IL 118432, ¶ 41.

¶ 42                                   2. *Paying Child Support*

¶ 43        The trial court next found Amy in indirect civil contempt for her failure to pay child support pursuant to the February 14, 2019, order. We agree with this finding.

¶ 44        Generally, "[f]ailure to pay child support is *prima facie* evidence of contempt and the alleged contemnor is obligated to show his failure to comply was not willful." *In re Marriage of Deike*, 381 Ill. App. 3d 620, 633 (2008). The alleged contemnor, here, Amy, can argue her failure to pay child support was not willful by establishing her "[f]inancial inability to comply with a support order." *Deike*, 381 Ill. App. 3d at 633. However, one's inability to pay cannot be proven by "general testimony" but must "be shown by definite and explicit evidence." *Deike*, 381 Ill. App. 3d at 633. An example of "general testimony" is that which will simply state the money was spent on living expenses. Definite and explicit evidence, by contrast, will "show, with reasonable certainty, the amount of money *** received since the order was entered and that it has been disbursed in the payment of expenses that under law *** should [be paid] before making any payment on the support decree." *In re Marriage of Sharp*, 369 Ill. App. 3d 271, 282 (2006) (citing *In re Marriage of Ramos*, 126 Ill. App. 3d 391, 398 (1984)).

¶ 45        The record confirms Amy had a certain, clear, concise obligation to pay child support under the February 14, 2019, order. That order took into account Amy's involuntary unemployment, which began on November 16, 2018. Judd testified Amy paid nothing toward her

child support obligation. He further testified she paid nothing toward the child support arrearage. Amy admitted as much. She did not refute Judd's testimony and, on cross-examination, confirmed Judd never asked her to pay the child support she owed him. Nor did Amy present any definite, explicit evidence showing with reasonable certainty her financial situation, *i.e.*, how much money she earned or received over the years and what lawful expenses she spent that money on rather than paying child support. See *Sharp*, 369 Ill. App. 3d at 282. Amy instead relied on her estoppel argument, which we have already addressed and rejected. Amy knew of her court-ordered obligation to pay child support pursuant to the February 14, 2019, order, and failed to honor it. Judd met his burden of proving a willful refusal to obey a court order, and Amy did not prove her noncompliance was not willful or contumacious or that she was unable to pay. *McCormick*, 2013 IL App (2d) 120100, ¶ 17; *Deike*, 381 Ill. App. 3d at 633. Accordingly, we hold the trial court did not abuse its discretion in finding Amy to be in indirect civil contempt on count II. See *Banister*, 2013 IL App (4th) 120916, ¶ 54.

¶ 46                                    3. *Paying Out-of-Pocket Medical Expenses*

¶ 47          The July 2016 judgment of dissolution and the February 2019 order required the parties to split their children's medical and dental expenses not covered by insurance. Subsequent court orders did not alter, let alone address, this issue. So, throughout this entire case, Amy was required to pay half of her children's out-of-pocket medical expenses. She paid none. She presented no evidence of her inability to pay the expenses. She testified she did not pay them because she "didn't receive any medical bills and Judd said he was paying. He was covering all the expenses." However, Judd testified Amy knew of the expenses because "[o]n some occasions she was the one taking [the children] to the doctor and [he] would give her [his] credit card or [he] would give the number—she would hand the phone to the person and [he] would pay it over

- 16 -

the phone." Judd testified Amy "would bring the bill or send the bill back with the kids." The trial court obviously weighed the evidence and argument and found Amy willfully refused to follow the order. This is a reasonable determination, meaning it was not arbitrary or fanciful. See *Seymour*, 2015 IL 118432, ¶ 41. There was a clear, concise, certain court order and the evidence clearly shows she did not follow it and had no convincing excuse for her willful conduct, like the inability to pay. *Johnson*, 134 Ill. App. 3d at 377; *McCormick*, 2013 IL App (2d) 120100, ¶ 17; *Deike*, 381 Ill. App. 3d at 633. We cannot say the court abused its discretion. See *Banister*, 2013 IL App (4th) 120916, ¶ 54; *Seymour*, 2015 IL 118432, ¶ 41.

¶ 48                              4. *Paying Expenses for Marital Residence*

¶ 49            The 2016 judgment of dissolution required Amy to pay the expenses related to the marital residence and refinance the mortgages. She remained under these obligations throughout this litigation, unmodified by any subsequent orders. David Giffin, executor of the Giffin estate, which held a mortgage on the residence, testified Amy became delinquent in paying mortgage payments, interest payments, and real estate taxes over the years. David testified Amy had not made any interest payments since September 2023. As of the April 7, 2025, hearing, David confirmed Amy had not paid any principal on the mortgage, had missed 24 interest payments (totaling $10,800), and had not paid property taxes for 2022 or 2023. Amy did not contest David's testimony; nor did she present any evidence showing her inability to pay. Judd testified Amy had been delinquent on the second mortgage, too. The evidence further showed Amy had not refinanced either mortgage on the property. Amy offered no suitable defense to this contempt allegation. She did not claim, let alone prove, an inability to pay the court-ordered expenses. See *Deike*, 381 Ill. App. 3d at 633. It was not unreasonable or arbitrary or fanciful for the trial court to conclude Amy willfully refused to comply with the order to pay all expenses on the marital

residence. See *Seymour*, 2015 IL 118432, ¶ 41; *Smith*, 239 Ill. App. 3d at 146-47. Accordingly, the court did not abuse its discretion in finding Amy in indirect civil contempt on count IV. See *Banister*, 2013 IL App (4th) 120916, ¶ 54.

¶ 50                              D. 2014-15 Tax Liability

¶ 51           Amy next challenges the trial court's order requiring her to pay half of Judd's income tax liability for 2014-15. Judd had filed his 2014-15 state taxes, and the court determined Amy's portion amounted to $2,524. Judd had not filed his federal tax returns for 2014-15, but the court ordered Amy to pay half of the tax liability once it was calculated. On appeal, Amy contends "the trial court erred in its calculation and assignment of tax liability" to her. In support of this argument, Amy's brief contains three sentences:

> "The trial court made a mistake in applying the law.
>
> The trial court made a mistake in deciding the facts.
>
> The trial court made a discretionary ruling that no reasonable
>
> person could have made."

Amy provided no record citations, nor did she cite any legal authority to support her position. We have long held that "[b]are contentions in the absence of argument or citation of authority do not merit consideration on appeal and are deemed [forfeited]." *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). The reviewing court "is not a repository into which an appellant may foist the burden of argument and research." *Obert*, 253 Ill. App. 3d at 682. These principles align with Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), which requires that an appellant's "[a]rgument *** shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." See *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5 (noting the appellate brief rules apply with equal force to

*pro se* litigants). Failure to comply with this rule and these principles results in forfeiture. *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56. Accordingly, we deem Amy's argument forfeited.

¶ 52                                    E. Attorney Fees and Costs

¶ 53            Lastly, Amy challenges the trial court's decision to order her to pay Judd's attorney fees and costs. Her brief recites the same three sentences:

> "The trial court made a mistake in applying the law.
>
> The trial court made a mistake in deciding the facts.
>
> The trial court made a discretionary ruling that no reasonable
>
> person could have made."

Applying the principles we outlined above, we deem this argument forfeited.

¶ 54                                    III. CONCLUSION

¶ 55            For the reasons stated, we affirm in part and reverse in part the trial court's judgment. Because the issue of Amy's unemployment permeated the court's order and impacted other decisions, like imputed income, we remand this matter to the trial court for further proceedings consistent with this order.

¶ 56            Affirmed in part and reversed in part; cause remanded.